## HIDDEN et al. v. DUREY, Collector of Internal Revenue.

District Court, N. D. New York. April 18, 1929.

Hun, Parker & Reilly, of Albany, N. Y. (William L. Woodward, of New York City, of counsel), for plaintiffs.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (B. Fitch Tompkins, Asst. U. S. Atty., of Syracuse, N. Y., C. M. Charest, General Counsel, Bureau of Internal Revenue, Wm. T. Sabine, Jr., Sp. Atty., Bureau of Internal Revenue, and P. E. Miller, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for defendant.

COOPER, District Judge. Plaintiffs as executors bring this action to recover $12,-181.13 federal estate tax paid under protest by them for the estate of Thomas E. Hidden, deceased. A jury trial was waived. The facts are undisputed. The questions involved are questions of law.

The decedent died on September 3, 1918, at the town of Northeast, Dutchess county, N. Y., leaving a will and five codicils, which were duly probated by the Surrogate's Court of Dutchess County, N. Y.

The will was dated June 16, 1904, and the five codicils were dated in chronological order as follows: November 9, 1911; December 13, 1911; May 29, 1912; January 14, 1914; January 9, 1918.

The executors first paid $131,647.32 federal estate tax in 1920. In 1923 the government assessed and collected $55,191.79 additional tax because of increases in the value of the estate over the values originally found. The executors complain that in assessing this last amount of $55,191.79 the Commissioner of Internal Revenue made no deduction from the amount of the net taxable estate for the present value of the eight so-called charitable trusts which pass to ten charitable and religious corporations under the residuary clause of the will. The total amount of these charitable trusts is $300,000, and their present value as of the date of the death of the decedent is $112,788.25 as conceded by both parties. Only 90 per cent. of this sum or $101,509.43 is available to the plaintiffs here, because these funds receive only 90 per cent. of such $300,000 as hereinafter shown.

The tax on this $101,509.43 at 12 per cent., the tax rate for the amount involved, is the sum of $12,181.13, for which sum, with interest, the plaintiff asks judgment. The decedent left a gross estate in excess of $3,-000,000. His specific bequests of real property and of personal property other than money are not involved in this action. The

bequests of money, either in trust or absolutely, made by the testator in his will and five codicils are as follows:

| | | |
|---|---|---|
| 1. | Charles T. Reynolds | $ 25,000 |
| 2. | Gustavus Reynolds | 25,000 |
| 3. | Adelaide Sutphen | 25,000 |
| 4. | Anna C. Reynolds (now McCarthy) | 25,000 |
| 5. | Cornelia Stevens | 50,000 |
| 6. | Mary K. Stevens | 50,000 |
| 7. | Hazel Stevens Lovelace | 50,000 |
| 8. | Henrietta G. Cattapani | 50,000 |
| 9. | Adelaide A. Sully<br>Frances E. Hidden<br>Mary L. H. Watson<br>Sarah E. Hidden<br>Edward S. Hidden | 500,000 |
| 10. | Marie L. R. Watson, fund to create annual income of | 3,000 |
| 11. | Marie L. R. Watson, " " | 6,000 |
| 12. | Frances E. Hidden, " " | 6,000 |
| 13. | Sarah E. Hidden, " " | 6,000 |
| 14. | Adelaide A. Sully, " " | 6,000 |
| 15. | Edward H. Reynolds, | 100,000 |
| 16. | Charles P. Hidden | 500,000 |
| 17. | Adelaide A. Sully | 4,000 |
| 18. | Frances E. Hidden | 4,000 |
| 19. | Marie L. H. Watson | 4,000 |
| 20. | Sarah B. Hidden | 4,000 |
| 21. | Anna Louise Gardner<br>(for her daughter Henrietta G. Cattapani) | 4,000 |
| 22. | Greenwood Cemetery | 2,000 |
| 23. | Kensico Cemetery | 700 |
| 24. | Daniel Crowley | 2,000 |

In the Nineteenth paragraph of his will the testator gave all of his residuary estate in equal shares to ten charitable and religious corporations therein named. He provided that the income of each of the first eight of the foregoing fifteen trusts should be paid to the beneficiary named in the trust during the life of such beneficiary and disposed of the remainder in the following language in each trust: "Upon her (or his, as the case might be) death said trust fund shall become a part of my residuary estate and be disposed of as such."

These eight trusts are denominated in these proceedings as the eight charitable trusts, but the beneficaries are not to be confused with the ten charitable and religious corporations who take the residuary estate.

The twenty-second paragraph of the first codicil provides as follows: "Whereas I have attempted to provide by my said will substantial benefits and legacies for certain religious and charitable institutions and have bequeathed to them my residuary estate, I now revoke, qualify and modify such legacy or legacies to this extent: viz, I will and direct that for the purpose of such provision the Executor and Executrix of my Will and Codicil or any Administrator con testamento annexo, in computing and creating the fund from which such legacy or legacies is to be paid, shall not put into such fund or treat as residuary estate the proceeds or corpus of any lapsed legacy or of any trust fund where the trust I have attempted to create has for any reason fallen or failed, or any real property which I have devised or attempted to devise in case any such devise should fail, and to this further extent I revoke, qualify or modify such legacy or legacies to said religious or charitable institutions so that I now debar and exclude each and every religious and charitable institution named in my said Will and Codicil thereto from sharing in any part of my estate except any such remainder as shall exist or appear if all the devises and legacies in my said Will and Codicil contained were duly capitalized and created; and I also will and declare that no lapse of any legacy, or failure of any devise, and no failure of or illegality in any trust, and no error of the draftsmen of my Will or Codicil shall operate to the advantage, or increase the benefit under my said Will, to any or all of the religious or charitable institutions mentioned in my said will or this codicil."

It soon appeared that there was not enough of the estate to pay all legacies and trusts in full.

One of these eight trust beneficiaries, Mary Louise Hidden Watson, brought an action in the Supreme Court of Dutchess County against the executors and all other legatees to construe the will and advise and direct the executors in the administration of the estate.

The Supreme Court of Dutchess County, N. Y., in its findings and decree dated December 18, 1926, approved and directed payments to be made by the executors as set forth in the fifth supplemental account verified the 8th day of April, 1926, under their schedule B–4, entitled:

"Containing a statement of all payments to be made for the benefit of the trusts and legacies as of January 11, 1926.

"To fourth payment of 16% to set up trusts under the will for the following beneficiaries. (The trusts will thereby be established to the amount of 91% of their full value)."

Then follows the names of 16 persons. Fifteen are the names of the beneficiaries of the 15 trusts. The sixteenth name is that of Charles P. Hidden, who was given a bequest of $500,000, and Schedule B–4 shows that including the payment therein enumerated to be paid to him he has received 91 per cent. of the full amount of his legacy.

Legacies numbered 17 to 24, inclusive, totaling $24,700, have been paid in full. The devise of the farm and personal property to four nieces has, of course, been fully satisfied and also the bequest to Charles P. Hidden

of clothing, jewelry, and personal belongings of the deceased.

This leaves all devises, bequests, legacies, and trusts paid in full except those expressed in terms of money. And the monetary legacies and trusts on which 91 per cent. has been paid total $2,009,700, using $585,000, the figure fixed by the Supreme Court of New York (P. Ex. 14 and 15, Supp. account of Exc. and decree of December 18, 1926), as the sum to be set aside to produce the four annuities of $6,000 each and the one annuity of $3,000. Assuming the deficiency to be 10 per cent. instead of 9 per cent., the sum of $200,970 is necessary to pay all the trusts and legacies in full. And $170,900 is necessary to make good the deficiency in all the monetary trusts and legacies other than the eight charitable trusts.

Defendant asserts that since there is no other residuary estate, the amount of the eight charitable trusts must upon the death of the beneficiaries be used to make good such deficiency under paragraph 22 of the first codicil, and under the general doctrine, stated in Matter of Title Guarantee & Trust Company, 195 N. Y. 339, 88 N. E. 375, that general and specific legacies and trusts must be paid in full before anything can go to the residuary estate. Defendant also claims that the deficiency is in fact greater than the full amount of the eight charitable trusts.

Plaintiff claims to recover the full amount sued for on the following grounds:

(a) The provisions of the first codicil, twenty-second paragraph, were not intended to cover a deficiency in assets of the estate, but to apply only to lapsed legacies and devises and illegal trusts.

(b) If the will were construed because of the twenty-second paragraph of the first codicil or otherwise as preferring the cash legacies and trusts to the residuary bequests to the ten charitable corporations, it would violate the rule of perpetuities in the state of New York and must be disregarded.

(c) In any aspect there is a balance for the residuary estate and taxes collected on the amount thereof should be refunded.

Plaintiff's contention (a) that the twenty-second paragraph of the first codicil relates only to lapsed and illegal legacies and trusts cannot be sustained.

The testator undoubtedly provided in the twenty-second clause that the amounts passing to the ten charitable and religious corporations should not be increased because of any lapsed legacies and devises or any illegal devises and trusts, and his provision for so doing would have been effective without the portion of the paragraph on which defendant relies, viz.: " * * * So that I now debar and exclude each and every charitable and religious institution named in my said will or codicil thereto from sharing in any part of my estate except any such remainder as shall exist or appear if all the devises and legacies of said will and codicil, were duly capitalized and created."

It is probable, therefore, that by the above-quoted words the testator intended to exclude any part of his estate from going by way of the residuary estate to the charitable corporations until all his other legacies and trusts were paid in full. Even if the twenty-second paragraph were not in the will or any codicil, the case would doubtless come under the doctrine laid down in Matter of Title Guarantee & Trust Company, 195 N. Y. 339, 88 N. E. 375, supra, and the residuary estate be used first to satisfy deficiencies in the definite legacies and trusts and only the balance pass to the residuary legatees. But this doctrine could be applied only so far as such distribution could be made without violating the doctrine against perpetuities.

But plaintiff's contention (b) seems well founded, that if each of the trust funds of the eight charitable trusts should be distributed pro rata among all the legacies and trusts, including the remaining charitable trusts, such distribution would violate the state statute against perpetuity, sometimes called the two-life rule. Plaintiff concedes that such violation would not result from the first death among the beneficiaries named in the eight charitable trusts, but contends that violation would ensue upon the death of each other of such beneficiaries.

Defendant contends that it is possible to carry out the intention of the decedent as expressed in the twenty-second clause of the first codicil to his will that the charitable institutions should receive nothing until all bequests and trusts were fully paid and established, without violating the rule of perpetuities in the state of New York. Defendant recognizes that the rule would be violated if any portion of the trust fund of the first dying beneficiary should pass to the third trust fund and alienation be suspended during the remainder of the life of the third beneficiary. Defendant suggests some ingenious way to avoid this by which the aforesaid portion of the trust fund of the first dying beneficiary which passed to the fund of the second dying beneficiary should not then be distributed pro rata among all the remaining trusts, legacies, and beneficiaries, including the remaining five of the eight charitable

trusts, but should pass exclusively to the noncharitable trusts and legacies. But this ingenious method could not be applied because the distribution among the survivors must be pro rata, according to the judgment of the Supreme Court of the State of New York.

The defendant and the federal courts are bound by the decisions of the appropriate state courts upon the probate of wills and their construction. Uterhart v. U. S., 240 U. S. 598, 36 S. Ct. 417, 60 L. Ed. 419; Boal v. Metropolitan Museum of Art (C. C. A.) 19 F.(2d) 454, referring to Id. (C. C. A.) 298 F. 894; Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152.

The state court's decision means that the entire amount of the funds of the second dying beneficiary of the eight charitable trusts must be divided pro rata among all the other charitable trusts and all the noncharitable trusts and legacies which may be entitled to share. There cannot be a mathematical legerdemain by which the fund of the second dying beneficiary may be divided into two parts, viz., one which was originally in the second charitable trust and the other one which came from the first charitable trust and the part which was originally in the second trust distributed pro rata among all funds entitled to share, and that small part received from the fund of the first dying charitable trust beneficiary be distributed, not pro rata, among all, but exclusively, among the noncharitable trusts.

It may be said also that such portion of the part which came from the first charitable trust to the second charitable trust as then passed to each of the noncharitable trusts would itself suspend the power of alienation for the remainder of the life of such noncharitable trust beneficiary, thus suspending it for three lives in being and thereby violating the two-life rule.

The cases cited by defendant do not support his contention. They are: Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481; In re Brundage's Estate, 101 Misc. Rep. 528, 167 N. Y. S. 694, affirmed In re Farmers' Loan & Trust Co., 186 App. Div. 722, 175 N. Y. S. 37, modified 226 N. Y. 691, 124 N. E. 1.

In the Vanderpoel Case the testamentary provision before the court differs substantially from the situation in the case at bar. There was no such suspension or alienation as here. The New York Court of Appeals there said (pages 185, 186, of 112 N. Y. (19 N. E. 487): "In the present case what is to go into the common fund, and so be subject-ed fairly to its rule of vesting, is each primary share,—'the principal' of each undivided one-quarter,—and nothing else. The accrued fractions are not mentioned or described, and these vest in each case upon the death of their owner, and without waiting for the additional death of the parent; for they are included in the general words of gift, which we have originally said were sufficient to vest the original shares; and since the words of payment, as we have also said, were not effective to postpone the vesting, and as no other date is indicated, we may properly hold that they vested upon the death of the child to whose life estate the fractions had been added. It follows that such portions of testator's property vested and became alienable at the end of two lives and there was no unlawful suspension of the power of alienation."

In the Farmers' Loan & Trust Company Case the court was passing on an accounting and not construing a will. The Court of Appeals said: "It is unnecessary at this time to decide whether the practical operation of the general plan of distribution of the remainder of the trusts created by the 7th clause of the will which was adopted by the surrogate may unlawfully suspend the power of alienation."

Plaintiff's position has better authority to support it.

Chapin on the Suspension of Power of Alienation discusses this subject and says in paragraph 109: "For if the express purpose is to have each share, upon the death of a beneficiary, successively divided, and subdivided, and re-sub-divided, and constantly added to and merged in the remaining shares as long as any of the beneficiaries live, the net result would be the same in relation to suspension, as if the interests of the beneficiaries were regarded as joint, and if more than two lives were involved, the scheme of suspension to continue during more than two lives would be void, in whole or in part, according to the circumstances."

The pro rata distribution among all remaining trusts and legacies of each of the eight charitable trusts except the first, upon the successive deaths of the beneficiaries with the increment received from each charitable trust whose beneficiary had previously died, seems to come definitely within Chapin's condemnation.

In Duncklee v. Butler, 38 App. Div. 99, 56 N. Y. S. 491, the provision of the will there involved has analogy to the situation arising under defendant's contention that all of the eight charitable trust funds must

be successively distributed to make up the deficiency in the remaining trust funds and legacies. The will of Butler provided that his residuary estate should be divided into four equal parts and the income of one of such parts to be paid to each of his three daughters during her life with the remainder to her heirs, and then provided: "* * * But ceases * * * as soon as each one of my daughters * * * and upon her death shall pay over the principal thereof to her issue * * * but if she shall die, leaving no issue, * * * then said one-fourth part of my estate shall be added to the portions of my estate held in trust for the benefit of my other children then living, an equal amount thereof to each portion." The Appellate Division in the First Department said: "* * * And it is only the subsequent clause, having reference to the death of a daughter without issue, which in any way contravenes the statute. That clause provides that said one-fourth part of his estate should be added to the portions of his estate held in trust for the benefit of his other children then living, an equal amount thereof to each portion. This provision upon the death of the daughter first dying without issue could be legally complied with, because the limitation would only be during the continuance of two lives. But, upon the death of another daughter without issue, no further limitation could legally be placed upon any portion of the share which had originally been set off to the daughter who had first died without issue. * * * *"

In Simpson v. Trust Company, 129 App. Div. 200, 113 N. Y. S. 370, affirmed without opinion 197 N. Y. 586, 91 N. E. 1120, testator placed one third of estate in trust for the benefit of the wife for life; at her death the portion so set apart to be added in equal proportions "to the parts or shares of my brothers and my sister me surviving," and directed that the remaining two thirds of the estate should be divided into as many parts as there were brothers or sisters surviving or dead leaving issue, the portions of the surviving brothers and sisters to be held in trust to pay the income to them for life and at the death of either brother or sister, his or her part to be added to the share of the survivor, and upon the death of the last survivor, the whole principal to be left to a nephew and niece. The court said at page 204 of 129 App. Div. (113 N. Y. S. 373): "If the true construction of the will be, as we consider that it is, that as to the share of the estate set apart for the widow, it is to be held by the executor in trust during her

lifetime, and after her death is to be held as to one-half thereof during the lifetime of the surviving brother, and as to one-half during the lifetime of the surviving sister, and that one of said halves is further to be held, upon the death of either the brother or the sister, during the lifetime of the survivor of them, there is a manifestly illegal suspension of the absolute ownership of one-sixth of the estate."

Moreover, the decision of the Surrogate's Court of Dutchess County, entered May 11, 1923, substantially decides that the eight so-called charitable trusts cannot be used to make up the deficiencies in the other trusts and legacies. After first deciding that there could be no exemptions from tax in favor of the ten charitable corporations, upon further consideration and representation that under such construction there would be a violation of the rule against perpetuities, the court changed its decision and exempted such charitable corporations from the state transfer tax for the present value of the residuary bequests to them.

While such decision is not binding upon the defendant because it was a decision limited to the imposition of a state tax and the defendant was not a party, it is nevertheless persuasive that the plaintiff's contention is right and that the principal of the eight charitable trusts cannot, except as to the first one terminated by the death of the beneficiary, be used to make good the deficiencies in the other trusts and legacies.

It is not necessary to follow defendant's artificial and non-pro rata distribution of the charitable trusts to avoid invalidating the eight charitable trusts or to avoid a decision that the testator died intestate as to such funds, or as to his whole estate.

Moreover, if the decedent be held to have died intestate as to these eight charitable trusts or even as to seven of them, the principal of these charitable trusts upon the death of the respective beneficiaries would go not to make up the deficiencies in the legacies and trusts provided in the will, but to the heirs at law of the decedent.

Paragraph 22 of the first codicil comes far from making such specific provisions for the eight charitable trusts as violates this statute against perpetuities. It is but a general statement that he wants his legacies and trusts paid in full before anything shall go to his ten residuary charitable corporations. Even if paragraph 22 were specific and itself violated the two-life rule, the invalid can readily be separated from the valid and effect given to the latter. We have but to nul-

lify paragraph 22 in so far as it violates the two-life rule and pass the remainder of the eight charitable trusts to the residuary estate and then to the ten charitable corporations as the testator intended when he first provided for the ten charitable corporations in his will.

It is not without significance in this respect that, in his fourth codicil dated January 14, 1914, nearly three years after the making of the first codicil containing this twenty-second paragraph, the testator restored one of the eight charitable trusts which he had revoked in his first codicil, and in such restoration used the same language used by him in his will in creating the eight charitable trusts: viz.: "Upon his death said trust fund shall become a part of my residuary estate and be disposed of as such." ■ For the purposes of this case, it is necessary, therefore, only to decide that whatever may have been the intent of the testator in paragraph 22 of the first codicil, and whatever application the doctrine expressed in the matter of the Title Guarantee & Trust Company, 195 N. Y., supra, might have under other circumstances, the eight charitable trust funds cannot, except the first one terminated, be used to supply the deficiency either in the other seven or any of the other noncharitable trusts and legacies.

Plaintiff's contention cannot be sustained that the Supreme Court of the State of New York in Dutchess County has decided that the principal sums of the eight charitable trusts cannot be used to make up any deficiency among the other trusts and legacies and that the defendant is bound by that decision. This is based upon the decision of that court dated December 18, 1926, approving an account by the executors. The pertinent provision is: "Ordered, adjudged and decreed * * * upon the setting up of the funds to create the annuities to the plaintiff and Frances E. Hidden, Sarah E. Hidden and Adelaide A. Sully, no further resort shall be made to the corpus of the estate to pay the percentage of annuities directed to be paid said annuitants except as the corpus of the estate may be apportioned to the funds set aside for such purpose and added to the fund set up to create such annuities."

This is the decision of the Supreme Court of New York providing for pro rata distribution.

It is not at all clear, however, that the provision of this decree excludes the corpus or principal of the eight charitable trusts. On the contrary, it is a more reasonable inference that it is intended to include moneys coming to the executors from all sources and would cover any moneys coming from any of these eight charitable trusts upon the death of the beneficiary. If it had been decided by the Supreme Court of New York State, it would be controlling here.

It is not necessary to give much consideration to defendant's contention that the deficiency exceeds not only the $270,000 (90 per cent. of the $300,000 trust funds), but exceeds the $300,000 itself, nor to plaintiff's contention that in any event there would be a balance for the residuary estate after the legacies and trusts should be paid in full. ■ Defendant's figures show a deficiency of $372,463.03. The difficulty with defendant's contention is that in arriving at such a sum as the deficiency, it is assumed that the funds necessary to be set aside to pay the five annuities totaling $27,000 is the sum of $675,-000. This assumption is rather arbitrary, in view of the fact that the Supreme Court of the State of New York in Dutchess County has in substance and effect decided that $585,000 is a sufficient sum to produce these annuities of $27,000, and the annuitants, the parties in interest, are apparently satisfied, because they have not appealed therefrom. The decision of the state court is binding on this court, as heretofore shown.

The sum of $90,000, the difference between $675,000 and $585,000, must be deducted from the defendant's alleged deficiency of $372,463.03. This would reduce the deficiency to $282,462.03, a sum below the $300,000 principal sum of the eight trusts, and thus leave a balance for the residuary estate. And this represents a deficiency, not for the noncharitable trusts alone, but for all trusts and legacies, charitable and noncharitable. It may be said further that while the government's figures of values of the estate and the present value of the eight charitable trusts must prevail, the state court's allocation of funds of the estate to the legacies and trusts, showing 90 per cent. paid and a consequent deficiency of $170,900 for the noncharitable legacies, must also prevail. From this it follows that for present purposes the deficiency is $170,900, and not $282,462.03 or $372,463.03, for all the trusts and legacies, charitable and noncharitable.

However, since it is the view of this court that none of these eight trusts except the one of the first beneficiary dying may be used to make good the deficiencies existing in these legacies and trusts, it matters not whose figures of deficiencies are correct. ■ It follows from the views expressed herein that the collector has taken from this

estate taxes to which the government is not entitled. The executors have sued to recover the excess tax exacted. The burden is on the plaintiffs. Plaintiffs have established that the estate was illegally taxed on so much of the net estate as is represented by the present value of seven of the eight so-called charitable trusts, which, under the residuary clause, pass to the ten charitable corporations.

The exact amount of such present value cannot be determined at this time, because no one knows which of the eight charitable trusts shall first terminate by the death of the beneficiary. Shall the plaintiff be sent out of court to return when one of the charitable trusts shall so terminate and the matter in the meantime be held in suspense, or plaintiffs be compelled to commence a new action which may possibly be barred by the statute of limitations, or shall the principle of the mortality tables be applied and it be presumed that the oldest beneficiary of the eight charitable trusts will die first, and the matter thus be determined at this time? This latter procedure will do the government no injustice, because the present value of such remainder is greater than that of any other, and, being deducted from the total present value, the return tax shall be correspondingly less. A saving of interest might also be effected for the government. If any injustice is done, it is done to the plaintiff's executors; but it is better for them that the matter be determined upon such basis than that they be sent out of court to await a time until it can be definitely ascertained which of the charitable trusts will first terminate.

The method of arriving at the present value of life estates and trusts for tax purposes is based on the principles of the mortality tables, and it is reasonable to determine which trust will first terminate and the present value by this method. It is therefore held that the first trust to be terminated will be that of Henrietta Cattapani, who is the oldest, according to the ages of the eight beneficiaries as given in the plaintiff's brief. That she is the oldest is also readily inferable from the present values of the various trusts as fixed in the state transfer tax proceeding in the Surrogate's Court.

The present value of the remainder of the trust as given in the plaintiff's brief and accepted by the defendant is $26,965.50. This is based upon the assumption that the full amount of the $50,000 trust fund found by the Supreme Court in Dutchess County to be the amount intended to be devised will be paid. But only 90 per cent. will be paid. Ninety per cent. thereof is $24,268.95.

Deducting this $24,268.95 from the $101,509.43, which is 90 per cent. of the present value of the $300,000 charitable trust funds, leaves $77,240.48. This represents the present value of the amount of the estate of the decedent which was erroneously included in the net estate for federal tax and upon which the plaintiff paid a tax of 12 per cent.

Plaintiff is therefore entitled to return of tax on $77,240.48, amounting to $9,268.85, with interest thereon from the date of the payment thereof, namely, August 2, 1923.

Judgment for plaintiff may be entered in accordance herewith.