## COMMISSIONER OF INTERNAL REVENUE v. BLAIR.

### No. 5648.

Circuit Court of Appeals, Seventh Circuit.
April 11, 1936.
Rehearing Denied May 27, 1936.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for petitioner.

J. F. Dammann and Calvin F. Selfridge, both of Chicago, Ill. (Wilson & McIlvaine, of Chicago, Ill., of counsel), for respondent.

Before EVANS and ALSCHULER, Circuit Judges, and BALTZELL, District Judge.

EVANS, Circuit Judge.

The taxability of a beneficiary under a testamentary trust for income theretofore assigned by him to his children is before this court for the second time. We previously held [60 F.(2d) 340] it to be a spendthrift trust under the Illinois law and held the income for 1923 taxable to the assignor. The instant appeal involves identical facts, except that the tax years involved are 1924 to 1926 and 1929, and reference is therefore made to our previous opinion for a statement of facts.

After the opinion of this court was announced, the trustees under the testamentary trust instituted suit against assignees in the Superior Court of Illinois to determine the validity of the assignments so they might know whether they were validly paying the beneficiary's income to the assignees, instead of paying it to the beneficiary. The Superior Court held, following this court's view, that this was a spendthrift trust and no assignment of income could be validly made. On appeal the Illinois Appellate Court for the first district reversed (Blair v. Linn, 274 Ill.App. 23) the Superior Court's ruling and held the trust not to be of spendthrift character and held the assignments valid and directed the Superior Court to enter a decree accordingly. The Board of Tax Appeals in the instant suit felt compelled to follow the Illinois Appellate Court decision which was rendered after the Circuit Court of Appeals decision. From the Board's decision, the Commissioner appeals.

Under the assignments, taxpayer's children received income as follows: 1924, $30,000; 1925, $48,000; 1926, $57,000; and 1929, $57,000. The children have paid tax on these sums and, since the Commissioner's determination against respondent, have filed claims for refunds which will not be acted upon until after termination of the case.

It is petitioner's chief contention that in spite of the assignment the income is nevertheless taxable to respondent because he had assigned merely the right to future income and no present interest or estate in the corpus. This court on the previous appeal found it unnecessary to pass on that question. 60 F.(2d) 340.

Respondent maintains that the decree of the Illinois. Superior Court (pursuant to the Appellate Court's mandate) is decisive of the property rights of the respective parties and also insists that an existing property right was duly assigned by Blair, the beneficiary, to his children.

Chapter 37, section 41, Smith-Hurd Ill. Ann.Stat., provides: "All opinions or decisions of said court upon a final hearing of any cause, shall be reduced to writing by the court, briefly giving therein the reasons for such opinion or decision, and be filed in the case in which rendered." This section amended, on April 25, 1935 (Smith-Hurd Ann.St. c. 37, § 41), the same section as previously existing by striking therefrom the proviso: "Provided, That such opinion shall not be of binding authority in any cause or proceeding, other than in that in which they may be filed."

■ *Binding Effect of State Court Determination of Rights Under Trust.* We are first called upon to determine whether the decree of the Superior Court of Illinois, entered pursuant to a direction from the Illinois Appellate Court, adjudging the trust not a spendthrift trust and holding valid the assignments of income therefrom, is binding upon this court in an income tax case, especially in view of the fact that on another occasion we held the trust to be a spendthrift trust. 60 F.(2d) 340.

We are of the opinion that the inferior state court's decree adjudging the rights between the parties must be followed by this court.

■ A somewhat analogous case is that of Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 312, 78 L.Ed. 634. There, the Court was passing upon the taxability of income distributed to the beneficiaries, which income represented depreciation of the corpus of the trust. The state court (California Probate Court), in an independent suit, held that the trustee should have reserved the amount which represented the depreciation. The Court, in that case, was construing section 219, Act of 1921 (42 Stat. 246), which provides:

" * * * the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or *order* governing the distribution, is distributable to such beneficiary, whether distributed or not * * *."

The Court held the California Probate Court decree to be binding. It said:

"We think the order of the state court was the order governing the distribution within the meaning of the Act. Moreover, the decision of that court, until reversed or overruled, establishes the law of California respecting distribution of the trust estate. It is none the less a declaration of the law of the state because not based on a statute, or earlier decisions. The rights of the beneficiaries are property rights and the court has adjudicated them. What the law as announced by that court adjudges distributable is, we think, to be so considered in applying section 219 of the Revenue Act of 1921. * * *

"The decree was a judgment which fixed the rights of the remaindermen and the obligations of the life tenants."

The court also said:

"The word 'order' [in the statute] must be given some meaning as applied to trust income which is to be distributed periodically; and we think it clear that the section intended that the order of the court having jurisdiction of the trust should be determinative as to what is distributable income for the purpose of division of the tax between the trust and the beneficiary."

The court does not discuss the fact that the decree was that of an inferior tribunal. It was passing upon a different subsection of the Act, one having a specific provision commanding recognition of an "order" governing distribution. The statute did not specify the rank of the court which made the order.

Although there are these distinctions between the Freuler Case and the instant one, we accept it as authority for holding that a final decree of a state court, supreme or inferior, entered in a specific matter such as the interpretation of rights under a testamentary trust, is binding upon a Federal court in determining the character of a trust, the income from which is the subject of a Federal tax.

The logic supporting the adoption of such a rule is the same as that which furnishes the basis of res judicata. We are adopting the ruling of a court having jurisdiction of the subject matter and of the person. The orderly administration of justice and final settlement of property rights will be promoted by so doing. It is true that this court has previously reached a contrary conclusion—that the trust was a spendthrift one—but our decision was before the Illinois court had declared itself in reference to a matter to which its jurisdiction extended. Moreover, the previous proceeding in this court was one to which the beneficiaries were not a party, whereas they were the parties to the state court proceeding.

■ This conclusion is not inconsistent with that announced in Graham v. White-Phillips Co., 296 U.S. 27, 56 S.Ct. 21, 22, 80 L.Ed. ——, 102 A.L.R. 24 (same case in this court, 74 F.(2d) 417), wherein the Supreme Court held that an Illinois Appellate Court decision was not binding upon this court in the construction of the Uniform Negotiable Instruments Law. The Court there pointed out that the Illinois appellate decisions were not in accord on that question; that a statute provided that their opinions "shall not be of binding authority in any cause or proceeding other than in that in which they may be filed." This proviso, as above pointed out, has since been repealed. The effect of such repeal is undetermined. As the section now stands, it merely provides for the reducing of opinions to writing · upon final hearing.

It may well be argued that *the repeal* of the provision making the decision binding only in the cause in which it is 'filed extended the scope and effect of the decisions of the Illinois Appellate Courts. That would be our view of its effect. But,

it is for the Illinois courts to finally determine the effect of this repeal statute, and when those courts have spoken we will willingly adopt their construction.

We rest our conclusion not upon the effect of the repeal of the state statute, but upon the judicial determination of rights by a court of competent jurisdiction authorized to hear and determine the rights of the parties under this testamentary trust. The final decision of such a court, which is not appealed from, is binding upon the Federal court for the purpose of determining the character of the trust which in turn may be determinative of a Federal income tax assessment.*

■ The correctness of our conclusion is not entirely free from doubt. We would be better satisfied if the suit in the state court had been more adversary in its nature. There is that which suggests a friendly suit to avoid taxes, to which there was no opposition or adverse party. All who joined in the litigation were desirous of obtaining the same end—the avoidance of a large part of the Federal income tax through division of the income by the beneficiary among his children. The Government was not a party to that suit. The suit was prosecuted only until a favorable decision was reached and then no appeal was taken. The first court ruled adversely to the complainants. On appeal a favorable decree was entered. There was no one interested in taking the case to the Illinois Supreme Court and the litigation ceased. In other words it was not unlike a consent decree. But consent decrees are binding if entered by a court of competent jurisdiction with the parties properly before it, in the absence of a showing of collusion between the parties or fraud upon the court. The record before us does not show either collusion or fraud, save by circumstances which are also consistent with good faith on the part of the litigants. We, therefore, accept the Illinois Appellate Court decision as controlling upon the nature of this trust.

■ *Did Assignments Effectively Bar Taxation of Income to Assignor?* Respondent executed eleven assignments during the period from 1923 to 1926 in varying amounts to his four children, individually. The assignments were similar in form, recit-

---

* This conclusion seems to be somewhat at variance with the decision in Miss. Valley Trust Co. v. Commissioner

(C.C.A.) 72 F.(2d) 197. But, see Hubbell v. Helvering, 70 F.(2d) 668, by the same court.

ing a consideration of one dollar, and were to continue until the death of either party to the assignment. Each document assigned, sold, and transferred to the assignee an interest, in a specified amount for each calendar year thereafter, in the net income which the assignor is or may be entitled to receive during his life from the trustees under the will of his father, and empowered the assignee to receipt for the amount. Excerpts from the will and the assignments are set forth in the margin.**

The assignments were made after testator's wife died and at a time when Blair was entitled to the entire income from the trust for life. It also provided that the income in the hands of the trustees should not be subject to the debts or obligations of Blair.

It is the Commissioner's contention that the respondent is liable for income taxes upon the income which was paid to his

---

** The will provided:

"Fourteenth:—To my nephew Chauncey J. Blair and my son Edward Tyler Blair, of Chicago, I give devise and bequeath all the rest and residue of my * * * estate * * *. To have and to hold the same to them and to the survivor of them and to their successors, and to the heirs executors and administrators of such survivor and successor, but in trust however to and for the following uses and purposes namely: in trust to hold, manage control, improve and lease the same, at their discretion, and the same to keep well insured and in good and tenantable repair and condition * * * and the income from said trust fund and estate to use expend account for and pay as follows to wit: * * *

"B. To pay to my said wife, as the same shall from time to time be received, one equal half part of all the net income which shall arise or accrue from the said trust fund * * *

"C. To pay to my said son, as the same shall from time to time be received, the other equal half part of all the net income which shall arise * * * from the said trust fund * * * during the full term of his natural life.

"D. At and after the decease of my said wife to pay my said son the whole of said net income for and during the full term of his natural life.

"E. At and after the decease of my said son, he leaving no child or children, * * * him surviving but leaving his said wife him surviving * * * to pay to the said wife of my said son one equal third part of said net income for and during the full term of the natural life of my said wife * * *.

"I. At and after the decease of my said wife, and of my said son and of the said wife of my said son, leaving them surviving no child or children nor any descendants of any deceased child or children of my said son, then to distribute * * * the whole * * * to my heirs at law; * * *

"Twenty:—I do hereby declare and direct that the income from said trust

fund and estate which is herein ordered to be, from time to time as the same shall be received paid to my said wife and to my said son and to his said wife and to their children and descendants of children in the cases aforesaid shall be paid to them directly upon their separate order and receipt therefor, for their sole and separate use respectively, and that *the same shall not be nor be made nor held in any manner nor by any proceedings whether in law or equity while yet in the hands of said trustees liable for or subject to the payment of any of the debts or obligations of either of the persons entitled to the same as above herein set forth.*"

The assignments provide:

"This Indenture Made and entered into * * * by and between Edward T. Blair * * * party of the first part, and Lucy Blair Linn, * * * party of the second part, Witnesseth:

"That the said party of the first part, in consideration of love and affection and One Dollar ($1) * * * does hereby sell, assign, transfer, * * * an interest amounting to * * * $6,000 for the remainder of the current calendar year, and * * * $9,000 in each calendar year thereafter in the net income which the said party of the first part now is, or may hereafter be, entitled to receive during his life from the Trustees under the Will of William Blair, Deceased * * * and the said party of the first part hereby authorizes * * * said party of the second part * * * to receive and receipt to the Trustees under the Will * * * of the income and moneys which shall at any time become payable to said party of the first part under or by virtue of the terms and provisions of the said Will * * *.

"All payments hereunder shall be made in person to said party of the second part and not upon any written or verbal order nor upon any assignment, nor upon any transfer by operation of law, and shall cease upon the death of either party hereto. * * *"

children, by virtue of the assignments, because the nature of respondent's interest was not that of a present property right capable of being assigned in præsenti—that, to avoid the tax, the assignor's interest must be an interest in the corpus of the trust or in the property from which the income accrued. Had he *such* a property interest and assigned it with the right to receive future income therefrom, then he could divest himself of tax liability upon said income.

A somewhat complete collection of cases is here attempted.

The Supreme Court has not had occasion to pass upon the identical question. In the case of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, an attorney assigned to his wife one-half of all income he should earn. The court held that notwithstanding this assignment the husband was taxable upon the entire income earned, because the taxing act specifically *taxed the earner* of the income, and he could not escape the tax through an assignment of future earnings .in whole or in part.

In an assignment of future partnership income by a husband, who was a partner, to his wife (Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665), the court held the income was taxable to the partner and not to the wife inasmuch as the tax was upon a *partner's* income. In Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916, the taxpayer transferred a fund in trust, the income payable for life to his wife, but he retained the complete power of revocation. · The court held the income was taxable to the donor, entire emphasis being placed upon the taxpayer's unfettered control of the trust.

See also Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. ——, 101 A. L.R. 391.

This circuit, in the case of Rosenwald v. Commissioner (C.C.A.) 33 F.(2d) 423, was passing upon the effect of an assignment by Rosenwald to the trustees of a charitable fund he had created, of all dividends and interest and rents on certain stocks, mortgages, bonds, and leaseholds, for a period of five years. We held Rosenwald was nevertheless taxable as to the income passing to the trust fund, on the ground that the taxpayer in actuality retained dominion over the income by virtue of the right to dispose of the principal.

It was pointed out that there might be a difference if the corpus of stocks, leaseholds, etc., had been conveyed to trustees irrevocably, or for a term of years and who, in turn, were to pay over the income.

Another case decided by this court is that of Shellabarger v. Commissioner, 38 F.(2d) 566, 568, wherein two sisters made a contract whereby one agreed to assign to the other, income which she was to receive under their father's testamentary trust if the assignee-sister did not contest the will. This court held the assignee liable for income tax on the income from the trust, even though it was first paid to the assignor. It was pointed out that there was no power of revocation in the assignor although the assignee's income was to cease if she should at any time start contest of the will. The court said:

"* * * where the beneficiary of a trust assigns an interest in the income therefrom, the grantee who received the income pursuant to the agreement, and not the grantor, is liable for the federal income tax thereon."

There is no contention made that the assignments in the case at bar were revocable. An examination of the assignments shows they ceased upon the death of either party. The case turned upon the facts peculiar to that case.

In the Sarther Grocery Co. v. Commissioner, 63 F.(2d) 68, 69, case, this court said that the Shellabarger Case "was peculiar in its facts," which indeed it was, particularly in the fact that the transfer to the sister of part of the income from the trust estate was in settlement of a threatened will contest, which, had it been successful, would have entirely defeated the trust.

In the case of Bishop v. Commissioner, 54 F.(2d) 298, 301, this court was passing upon the taxability of insurance renewal commissions where the agent previously assigned to his wife one-third of all renewal commissions which he thereafter would receive under his contract with his employer insurance company. The court, nevertheless, held the husband-assignor taxable on the assigned income, pointing out the uncertainty at the time of assignment of the accrual of renewal commissions. In this case this court intimates that there needs be some property owned capable of assignment in præsenti before tax liability can be avoided. We said:

"* * * We are convinced that the subject-matter of petitioner's assignment to his wife was income per se, and that it was not in any sense a present property right which was itself productive of income. * * * What property did she then own which produced these commissions? Certainly none. * * * It is perfectly obvious from this language [in the assignment] that petitioner had no intention of conveying a property right in præsenti, but only in future income as it might become due to him. This brings the case squarely within the rule that instruments intended to deflect income subsequently falling due serially are unavailing for tax purposes * * *."

In Copland v. Commissioner (C.C.A.) 41 F.(2d) 501, a husband assigned to his wife all his interest in a stock syndicate and all income to be derived therefrom (although he remained liable for losses). This court held the income taxable to the wife, pointing out that there had been an irrevocable transfer of interest in the syndicate—in the corpus of the syndicate as well; that lack of consideration was immaterial inasmuch as the gift was completed; that the syndicate was not in essence a partnership so that the income constituted remuneration for personal services.

The Court of Appeals of the third circuit, in the case of Nelson v. Ferguson, 56 F.(2d) 121, 124, passed upon a case where an employee had vested title to a patent in his employer (defeasible on certain conditions) reserving the right to a certain share in the profits from the patent. The court stated that this right to profits was such a present property right that it might be assigned to a wife irrevocably, and he be thereby relieved of income taxes upon the profits passing to her under the assignment. The court pointed out that what was assigned was not future salary (as in the Earl Case) or of things not then in existence, but was an existing thing—property in a contract.

"The assignment being of property was therefore not merely an assignment of income when earned, though from the property assigned profits and income were expected to flow. * * * Though the future income from this property right was uncertain and contingent as to amount, the right itself, the thing assigned, was fixed and certain—not revocable [as in the Corliss Case] and was independent of any future service or any future action on the part of the assignor."

In discussing the Earl Case, the court said:

"There was no existing thing, tangible or intangible, to which at its execution the contract could presently attach. * * * One-half of the husband's earnings never could be paid to the wife unless and until earnings had accrued to him on account of things he had done, services he had rendered."

The Court of Appeals of the second circuit passed upon an analogous question in the case of Commissioner v. Field, 42 F.(2d) 820, 822, where a beneficiary under a trust assigned to his wife two-thirds interest in all income he received from the trust. The assignor also was to receive the corpus of the trust when he was fifty, and he also had the right to terminate the trust at any time. The court held the assignor nontaxable as to the income assigned. It said:

"So far as we know, it is universally true that the law considers an equitable interest for life or for a term of years as present property, alienable like any other * * *. The law of Illinois is the same * * *. In Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897, a series of payments of income was treated as integrated into an existing interest, and for that reason alone the payments were income. No doubt the difference is conventional; there is no inherent reason why other series of future installments should not be regarded as constituting a single right, as is an annuity or the reversion upon a sublease. Some are, some are not; the distinction is historical, not rational. The interest * * * was presently assignable like a bond or building * * *."

This court commented upon the Field Case in the Bishop Case, saying:

"In that case the income on the trust fund was not contingent—it was a present right, and fixed in all respects except as to amount."

Two District Court cases, O'Malley-Keyes v. Eaton, 24 F.(2d) 436, and Young v. Gnichtel, 28 F.(2d) 789, held the assignors to be nontaxable as to income passing to assignees under irrevocable assignments of interests in trust funds.

The Court of Appeals of the eighth circuit in Van Meter v. Commissioner, 61

F.(2d) 817, held insurance renewal commissions taxable to the earner thereof despite assignment and payment of commissions directly to assignee.

In Helvering, Commissioner, v. Coxey, 79 F.(2d) 661, 662 (C.C.A.3), taxpayer was to receive entire income for life from residuary trust under his father's will, the corpus to go to his children upon his death. There was no restriction upon the right to assign. The taxpayer by an irrevocable assignment to his wife, from whom he was separated, assigned $8,400 per annum during her life and the life of the children. The wife agreed to ask for no further support for herself or her children. She also released all dower right in taxpayer's property. The trustee had paid her the sum agreed upon for two years. The court said:

"He made an irrevocable assignment and retained no control over what he assigned. The courts and this board have held that the owner of such property, who absolutely and irrevocably divests himself of all or a part of the property, is no longer burdened with tax on the income from the part assigned. * * * In so holding, the board committed no error. The assignment was absolute, irrevocable, and so far as the part assigned was concerned, extinguished all future income which otherwise would have accrued to the taxpayer."

In Brewster v. United States, 9 F. Supp. 686, 687, the Court of Claims said:

"It is not denied that the income here in dispute received by plaintiff from her father's estate would have been taxable to her had she not entered into a contract with her brother Paul providing for the payment of a portion thereof to him. The character of the income rendered is taxable under the statute and the only question is whether the payments to her brother, in fulfillment of her agreement with him, had the effect of transferring the tax liability to her brother Paul. We think the agreement in question was not an assignment of property from which the income in question was derived, and in the situation here presented the amounts involved had to become income to plaintiff before she could pay them to her brother. The agreement between them imposed no obligation on the trustees to pay the brother any amount. The trustees were not parties to the contract and their only obligation, in so far as the case is concerned, was to pay the income from the trust fund to the plaintiff. * * * From a consideration of the agreement and the surrounding facts and circumstances, we are of opinion that the contract did not constitute an assignment by plaintiff of any portion of the trust income as such, nor did it create in Paul any ownership of any part of such income. [The court said it was unable to agree with the Shellabarger Case.] * * * Upon the facts in this case, we are of the opinion the amounts paid by plaintiff to her brother Paul, pursuant to the agreement between them, were first income to her and were properly included in her gross income by the defendant."

In Wood v. Commissioner of Internal Revenue, 74 F.(2d) 78 (C.C.A.6), the court said:

"The sole legal question is whether one-half of the dividends paid by Edington & Co., Inc., in 1926, on shares of stock held by the trustees of the estate of William M. Wood, Jr., was income to petitioner who received, under the decedent's will, the right to the net income from such estate for life, or whether such sum was income to petitioner's children, to whose trustees she had released one-half of the net income resulting from the investment in Edington & Co., Inc. * * *

"The Court of Claims held that the assignment of income as it is received does not relieve from tax thereon the person to whom the income was payable in the first instance. This decision was correct. [The court pointed out that the trustees of the decedent's estate could at any time sell the stock of E. & Co. and thereby cut off the income.] * * * All future payments into the trust estates were of anticipatory income. * * * The dividends attempted to be released might never be received. There was no assignment, release, or transfer of the property right which produced the income. Every case cited on this point for the petitioner depends for its decision upon a finding that an existing property right had been assigned. We search this record in vain for an assignment in præsenti, and find only a release of income that might or might not be earned in the future. Such an arrangement could not relieve the petitioner of the tax."

See also Porter v. United States (Ct. Cl.) 52 F.(2d) 1056.

It is not easy to reconcile the twentieth paragraph of the will with any conclusion which would exempt the beneficiary, Blair, from income tax upon the entire income. The provision that—"* * * the same shall not be nor be made nor held in any manner nor by any proceedings whether in law or equity while yet in the hands of said trustees liable for or subject to the payment of any of the debts or obligations of either of the persons entitled to the same as above set forth," is inconsistent with the income's assignability to pay debts or for any other purpose, until after it has become the property of said beneficiary. It is at least persuasive of the construction which we must place upon the character of the beneficiary's interest.

Considering all the evidence, we are convinced that the entire income was properly chargeable to Blair for the purpose of determining his income tax.

The question is not one of the validity of the assignments but for the purpose of determining income tax liability it is one involving the date when the income became transferable. This question turns upon whether the assignor had such an interest in the corpus of the trust as to permit of its transfer or whether the assignor's interest was separate from the property and limited to the income which accrued from year to year.

The latter seems to be the situation. The testator made an income provision for his son. It was in the trustees' hands beyond the reach of the son's creditors. The son could not create obligations enforceable against it. Upon the son's death the said income ceased. It passed to either his children or to the heirs of the testator or in part to the widow of the son, depending upon survivorship, etc. The income passed to them not by act of the son, but by the testamentary trust provision of the testator. The son's interest was therefore not in any way attached to the corpus of the estate that produced the income. The income was not even subject to his disposition until he received it. The attempted assignment to his children was in legal effect merely a direction to the trustees to pay to his children, out of the income *due to him,* various specified amounts each year. It does not militate against the conclusion that the income was *his,* and was due to him. While he could authorize the trustees to deliver to another what was due to him, it was not deliverable until it was *his to dispose of.*

The order of the Board of Tax Appeals is reversed with directions to enter an order in accordance with the views here expressed.