Seahill Co. v. Commissioner.
Seahill Co. v. Commissioner
Docket No. 955-62.
United States Tax Court
T.C. Memo 1964-56; 1964 Tax Ct. Memo LEXIS 280; 23 T.C.M. (CCH) 408; T.C.M. (RIA) 64056; March 6, 1964
*280 Petitioner made various expenditures in renovating and improving a building for a new tenant under the terms of the lease. Held, all of the expenditures made by petitioner were part of an overall plan for renovating and improving the building, and must be capitalized. Held, further, real estate commission paid for obtaining the lease is not deductible in the year paid but must be amortized over the term of the lease, Held, further, advance rental received at time lease executed is includable in income in year received. Clifford Segal (an officer), for the petitioner. Eugene B. Smith, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year 1958 in the amount of $3,225.68. The issues for decision are: *281 (1) Whether petitioner is entitled to deduct amounts totaling $2,947 as the costs of repairs to its commercial rental property, or whether such amounts must be capitalized; (2) Whether a commission paid by petitioner to a realtor for his services in obtaining a 15-year lease of petitioner's building are deductible in 1958 or must be amortized over the term of the lease; (3) Whether petitioner received the amount of $12,500 from its lessee in 1958 as advance rental which must be included in gross income in its entirety for that year; and (4) Whether petitioner is entitled to a deduction in 1958 for a net operating loss carryover from 1957. Findings of Fact Some of the facts were stipulated and are so found. Petitioner is a corporation, organized under the laws of New Jersey in 1939. During the taxable year 1958, petitioner operated in the State of New Jersey and filed its Federal corporation income tax return for the taxable year 1958, on the basis of a calendar year and by the cash method of accounting, with the district director of internal revenue, Newark, N.J. Petitioner engaged generally in the ownership and management of commercial rental property. During the period *282 here involved petitioner owned a commercial building in East Orange, N.J. The building was constructed in 1941 and was a one-story building, 50 feet wide and 125 feet in depth, located on the main business street in East Orange, surrounded by similar commercialtype buildings. It was occupied under lease by a supermarket until 1957 when the lease expired. Thereafter for a period of 13 months the building remained unoccupied. The treasurer and one of two officers of petitioner during the year 1958 was Clifford Segal, hereafter referred to as Segal. He lived in Florida and visited East Orange several times a year to look after the maintenance and rental of petitioner's building. In January 1958, Segal visited petitioner's building in East Organge and inspected it. He had not seen the building since the preceding summer and he found that it was in a state of disrepair. The roof of the building, which was flat with a pitch to the rear, had leaked in several places, and lighting fixtures as well as part of one wall had been damaged by water. Plaster had eroded from one section of a wall and it was obvious that repairs were necessary. Upon seeing the damage done by leakage, Segal decided *283 that repairs should be made immediately. Some of the damage was due to skylights in the roof, and Segal decided to have the skylights removed at the same time the roof was repaired. On this visit to East Orange Segal also negotiated for rental of the building. On January 31, 1958, petitioner entered into a lease agreement with the General Fireproofing Co., an Ohio corporation engaged principally in the manufacture of office furniture and equipment, for a term of 15 years beginning March 1, 1958, at an agreed annual rental of $12,500 per year for the first 10 years and $13,000 per year for the next 5 years. As a part of this rental provision in the lease, it was further agreed that the lessee was to pay petitioner on or before March 1, 1958, the sum of $12,500, termed "rent in advance" and "advance rent" in the lease, which was to be credited to the tenant at the rate of $208.33 per month for the period March 1, 1958, to February 28, 1963. A rider attached to the lease also provided: 33rd: The Landlord agrees at his own cost and expense to make the following improvements to the demised premises, contracts for said improvements to be let upon the signing and execution of this lease: *284 1. Store front: Replace panels to which sign was attached. Install glass and aluminum entrance door of weather-tight construction. Provide a complete cleanup of entire store front. 2. Ceiling: Install new ceiling of 3/4inch mineral acoustical tile travertize pattern including the covering of the skylight areas. 3. Lighting: Furnish fluorescent fixtures to provide 40-foot candles at desk height. 4. Floor: Replace floor where warped or otherwise not level. Cover floor with Armstrong's 1/8inch custom corlon vinyl tile or equal, colors to be selected by Tenant. 5. Walls: Replace all damaged plaster and repaint in color to be selected by Tenant. 6. Toilet rooms: Install modern toilet rooms for men and women. Floors and wainscots 48inch high to be of ceramic tile. 7. Heating system: Put heating system in first-class working order. 8. Air-conditioning: Install adequate air-conditioning system. 9. Rear of building: Install weather-tight metal-screened double doors to replace present steel curtain and doors. The building had been vacant for 13 months because petitioner had not been able to find a tenant willing to pay what Segal considered to be a reasonable rent, the highest *285 offer received during that period having been in the neighborhood of $8,400 per annum. Petitioner expended a total of $21,796 for the improvements and repairs referred to in the rider to the lease. On its income tax return for 1958 petitioner treated $18,794 of the preceding amount as a capital expenditure (deducting the amount of $1,044.10 for 10 months' depreciation computed on the estimated useful life of 15 years), and claimed a deduction for the remainder of the expenditures in the amount of $3,002 as repair expenses. This deduction for repair expenses was explained on the return as follows: Plumbing
$ 30
Electrician
10
Carpenter
25
Repair roof
250
Cover roof
795
Painting
638
Repair walls
125
Reconstruct electric fixtures
1,074
Sidewalk repairs
55
Total claimed repair ex-
pense
$3,002
The foregoing item of $795 explained as "Cover roof" was the price petitioner paid to a contractor for having one layer of tar paper laid on the existing roof of its building. The item of $250 explained as "Repair roof" was paid to the same contractor for removing the skylights from the roof of the building. The item of $638 for painting was paid by petitioner *286 for having its building painted inside and out. Segal had an electrical contractor install 12 new fluorescent lighting fixtures in the building and had the same contractor remove all the old fluorescent fixtures and clean, paint, repair, rewire, and reinstall them. The total amount paid by petitioner to the electrical contractor for this work came to $2,148. Segal estimated that 50 percent of the amount, or $1,074, was attributable to removing, cleaning, and repairing the fixtures which had been damaged by leakage from the roof. However, at Segal's request the electrical contractor itemized his bill which indicated that the amount attributable to removing, cleaning, repairing, and reinstalling the old fixtures was $1,280 and the amount attributable to installing new fixtures was $868. Respondent determined that all of the above items, except the sidewalk repairs of $55, must be capitalized because made as a part of a general rehabilitation and improvement plan. In 1958 petitioner paid the amount of $6,590.62 to a realtor in Newark as a commission for obtaining the lease with the General Fireproofing Co. The real estate commission was based on rates established by the East Orange *287 Real Estate Board. Petitioner was entitled to a 5-percent discount from the usual real estate commission by reason of paying cash to the realtor in 1958. The realtor also agreed that the commission was to be decreased by any amount spent by petitioner for any improvements called for in the lease which exceeded $23,500. On its return for 1958 petitioner deducted the amount of $6,590.62 as a real estate commission. Respondent determined that the deduction is not allowable but should be treated as a capital expenditure, to be amortized over the period of the lease. Petitioner included the entire $12,500 "advance rent" in gross income reported on its 1958 tax return but in its petition herein claimed that $10,520.85 was not properly includable in its income for 1958. Respondent's position is that the entire $12,500 is includable in petitioner's income for 1958 as advance rental. On its tax return for 1958 petitioner claimed a net operating loss deduction of $2,581.74 as a loss carryforward from 1957, which respondent determined was not allowable. Petitioner offered no evidence on this issue. It is agreed that petitioner is entitled to a net operating loss carryback deduction in *288 1958 by reason of net operating losses sustained in 1960 and 1961. Opinion The first issue is concerned with whether certain expenditures, set forth in our findings, constitute expenditures for repairs to be deducted in 1958, or whether they must be capitalized. These items total $3,002. Petitioner incurred these expenditures in January 1958, at the same time it incurred other more extensive expenditures for improving and rehabilitating its building for use of a new tenant as required under the terms of the lease. Of the expenditures totaling $21,796, petitioner treated $18,794 thereof as expenditures for capital improvements, but claimed the balance of $3,002 as expenditures for ordinary repairs to rental property, deductible in 1958. The burden is of course upon petitioner to prove its assertions, and it is a question of fact whether the items were repairs on the one hand or replacements, alterations, improvements, or additions on the other. Coca-Cola Bottling Works, 19 B.T.A. 1055 (1930). Taken individually, some of the items would be deductible as expenditures for *289 the ordinary maintenance of the building.[1] However, we believe that dispositive of petitioner's contentions is the familiar principle that repair items are not currently deductible if they are undertaken as part of a general plan for renovation and improvement. In such a case, the repair work is simply part of the overall program of rehabilitation and reconditioning and constitutes a capital expenditure. Bloomfield Steamship Co., 33 T.C. 75, (1959), affirmed per curiam 285 F. 2d 431 (C.A. 5, 1961); Joseph Merrick Jones, 24 T.C. 563 (1955), affd. 242 F. 2d 616 (C.A. 5, 1957); California Casket Co., 19 T.C. 32 (1952); Coca-Cola Bottling Works, supra; Home News Publishing Co., 18 B.T.A. 1008 (1930); I. M. Cowell, 18 B.T.A. 997 (1930). *290 The evidence indicates that petitioner's building could have been rented during the 13 months that it was unoccupied at a rental of about $8,400 per year. This rental was obviously unsatisfactory to petitioner, and in January 1958 steps were taken to alter and improve the building to the point where it could be rented under a 15-year lease for $12,500 per year. Undoubtedly, therefore, these alterations and improvements added to the value of the building. It appears that, as part of the plan for renovating and altering the building, the items in question were incurred. It is undisputed that they were incurred at the same time as the general alterations and that the work was done, for the most part, by the same contractors. The lessee insisted upon them as a part of the renovations generally before execution of the lease. Segal has testified that they would have been made in any event, and that it was only coincidence that they were undertaken at the same time as the other work of alterations and improvements. But the essential fact is that they were part of the plan, or "general scheme," see Home News Publishing Co., supra, for the renovation and alteration of the building *291 to suit the needs of the prospective tenant over a 15-year period. They are, therefore, to be treated as capital expenditures, the cost of which are to be applied annually against the rental income as it is received, Joseph Merrick Jones, supra, even if under other circumstances they might be deemed repair expenses. We hold for respondent on this issue. In 1958 petitioner agreed to pay a realtor a commission for his services in obtaining a lessee for petitioner's building. The commission was to be computed in accordance with local real estate board rates which permitted a 5-percent discount for cash payment. Petitioner paid the commission in 1958 to secure the cash discount, and claimed a deduction in 1958 for the entire amount paid. Respondent has determined that the amount of the commission must be amortized over the 15-year period of the lease. Respondent's determination finds support in the rule that commissions paid in connection with the procurement of a lease are to be amortized over the term of the lease and not deducted as an expense in the year of payment. See *292 Renwick v. United States, 87 F. 2d 123 (C.A. 7, 1936); Meyran v. Commissioner, 63 F. 2d 986 (C.A. 3, 1933), affirming a Memorandum Opinion of this Court; Edward T. Blair, 31 B.T.A. 1192, 1205 (1935), reversed on another issue 83 F. 2d 655 (C.A. 7, 1936), revd. 300 U.S. 5 (1937); Spinks Realty Co. v. Burnet, 62 F. 2d 860 (C.A.D.C. 1932), affirming 21 B.T.A. 674 (1930), certiorari denied 290 U.S. 636 (1933). Petitioner argues that the commission was paid in 1958 solely to obtain the cash discount, but we fail to see how this fact would serve to remove the case from operation of the general rule, and we hold for respondent on this issue. The next issue is whether the lessee's advance rental, paid to petitioner in 1958, constitutes income in its entirety in that year. The lessee paid the sum of $12,500 to petitioner in 1958 as advance rental under the lease, to be credited monthly to the lessee's rental payments over a 5-year period. Petitioner argues that the amount was paid by the lessee to enable petitioner to undertake the program of renovation of the building, and as we *293 understand petitioner's contention, it is that petitioner simply borrowed the funds from the lessee, repaying the amount as it was credited monthly over the 5-year period. The parties treated the amount as advance rental and so referred to it in the lease, and section 1.61-8(b), Income Tax Regs., provides that gross income includes advance rentals which must be included in gross income in the year of receipt, regardless of the method of accounting employed by the recipient. And see Kohler-Campbell Corporation v. United States, 298 F. 2d 911 (C.A. 4, 1962); Astor Holding Co. v. Commissioner, 135 F. 2d 47 C.A. 5, 1943), affirming a Memorandum Opinion of this Court, and cases therein cited. The instant case falls squarely within this general rule. Petitioner has not proved that the amount was a loan or anything other than what it purported to be; that is, advance rental payments. And petitioner has failed to prove even that it was obliged to use the funds for renovation or for any other purpose. Also see Jack August, 17 T.C. 1165 (1952). *294 Respondent's determination is sustained. The final issue presented by the pleadings is whether petitioner is entitled to a net operating loss deduction in the year 1958, representing a loss carryover from the year 1957. No evidence was submitted on this issue, and we are constrained to hold for respondent on this issue. To reflect agreed adjustments, Decision will be entered under Rule 50. Footnotes
1. There might be some question about some of the items, however, even if taken individually, such as the removal of the skylights, which unquestionably entailed a structural change, and the replacement of the roof covering, which the contractor guaranteed for 5 years. Ordinarily a new roof is considered an improvement or addition to a building and generally is a replacement for an item which has been depreciated. See Georgia Car & Locomotive Co., 2 B.T.A. 986↩ (1925).