(No. 20147.—

WILLIAM A. PAINE *et al.* Defendants in Error, *vs.* THE SHERIDAN TRUST AND SAVINGS BANK, Plaintiff in Error.

*Opinion filed October 25, 1930—Rehearing denied February 5, 1931.*

KIRKLAND, FLEMING, GREEN & MARTIN, (WEYMOUTH KIRKLAND, CHARLES F. RATHBUN, and WILLIAM H. SYMMES, of counsel,) for plaintiff in error.

POPPENHUSEN, JOHNSTON, THOMPSON & COLE, (FLOYD E. THOMPSON, and HENRY JACKSON DARBY, of counsel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on *certiorari* to review the judgment of the Appellate Court for the First District, reversing, with a finding of facts, a judgment entered in the circuit court of Cook county against defendants in error. Defendants in error brought a suit in assumpsit against plaintiff in error to recover the proceeds of a check accepted by plaintiff in error in payment of the indebtedness of one Collum, a cashier of defendants in error. Paine, Webber & Co. is a co-partnership doing a brokerage business, buying and selling securities. In its employ as cashiers were C. Edgar Carlson and Joseph J. Collum. Carlson had charge of the collateral and cashier's cage and Collum was his assistant. Both had authority to sign checks for the brokerage company, but checks signed by them were required to be signed by either N. J. O'Brien, resident partner of the firm, Walter Brunton, head book-keeper, or C. J. Bridgen, office manager. In December, 1926, Carlson, for Collum, borrowed from plaintiff in error $5500, giving his note there-

for, secured by 600 shares of preferred stock of the Julian Petroleum Corporation, which stock belonged to Collum. In January, 1927, Collum borrowed a like amount from plaintiff in error bank and pledged as security for his note an additional 600 shares of preferred stock of the Julian Petroleum Corporation. From time to time thereafter Collum made payments on both of these notes by cash or by his personal check. On May 10, 1927, there remained on each note a balance of $1650. On that day the plaintiff in error bank notified Collum by telephone that this total balance of $3300, with $3.85 interest, must be paid, as the market value of the collateral was declining. Collum replied that if the bank would send the notes and collateral to him at the cashier's cage of Paine, Webber & Co. he would give a check for the full amount due. On the next morning plaintiff in error by its messenger delivered to Collum at the cashier's window, as directed, the two notes and certificates of stock, and Collum delivered to the messenger a check on Paine, Webber & Co.'s check form and drawn on the Standard Trust and Savings Bank in the sum of $3303.85, with Sheridan Trust and Savings Bank, plaintiff in error, as payee. This check was signed, "Paine, Webber & Company, Walter Brunton, C. E. Carlson." It was cashed through the clearing house by plaintiff in error and the proceeds applied to the payment of the balance due on Collum's notes and interest. On the day this check was drawn, Paine, Webber & Co. was indebted to plaintiff in error in the sum of $1058.97, and this indebtedness was on that day paid by another check of defendants in error. Except for the signatures the check here involved was in the handwriting of Collum. The check register of Paine, Webber & Co. showed it to have been issued in payment of 100 shares of Warner-A stock. On May 12, 1927, during an audit of defendants in error's Chicago office, one Kelly, the auditor, discovered an irregularity in Collum's accounts. An investigation was commenced, and on May 13 Collum

confessed to O'Brien that he was short in his accounts. He did not explain the issuance of the check involved here until it was discovered, some days later, that it was not given in payment of Warner-A or other stock but was paid to plaintiff in error bank, whereupon he explained that it was given to pay his personal indebtedness. On June 6, 1927, defendants in error, by their attorney, wrote plaintiff in error, advising it of the discovery and requested information as to the circumstances under which the check was used by Collum to pay his personal obligation and demanded that plaintiff in error return the proceeds of the check. The return of the proceeds was refused and on June 25 this action was commenced.

The trial court found the issues in favor of plaintiff in error and dismissed the action at defendants in error's costs. On appeal to the Appellate Court that court reversed the judgment of the lower court and rendered a judgment for defendants in error in the sum of $3303.85 and legal interest thereon from June 6, 1927. That court also entered the following finding of facts: "We find as facts in this case that Collum, plaintiffs' agent and cashier, was not authorized by plaintiffs to use their funds to pay a personal indebtedness of his, and that he was not authorized by them to issue their said check for $3303.85, payable to the order of defendant bank, and to deliver the same to said bank in liquidation of an indebtedness then owing to said bank by him or by him and Carlson; that defendant bank had notice or was put upon notice of these facts; that plaintiffs never by word, act or deed advised defendant bank or in any way held out to the bank that Collum had any such authority, and that plaintiffs never ratified Collum's acts in issuing and delivering said check."

Plaintiff in error contends that it was the payee in the check and the holder thereof in due course without any notice of any infirmity or defect in it and was therefore entitled to receive the same and apply the proceeds to Col-

lum's indebtedness, and that as it was an innocent party and defendants in error put it in the power of Collum to commit the fraud they should bear the loss.

Sections 52 and 56 of the Negotiable Instruments act (Cahill's Stat. 1929, p. 1807,) are as follows:

"Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

"Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

There is no contention in this case that the check is not complete and regular upon its face or that it was not issued for value. The question to be determined in the case is whether, at the time plaintiff in error bank took the check, it had knowledge of any infirmity in the instrument or defect in the title of the person negotiating it, or knowledge of such facts as would cause the taking of it to amount to bad faith.

The Appellate Court in its finding of facts found, as we have seen, that Collum was not authorized to use the funds of Paine, Webber & Co. to pay his personal indebtedness and was not authorized to use for that purpose the particular check issued. It also found "that the defendant bank had notice or was put upon notice of these facts;"

also that there had been no ratification of Collum's acts by defendants in error. The question here concerns the effect of this finding of fact on this appeal. Plaintiff in error's counsel argue that the finding that the bank had notice or was put upon notice was a legal conclusion and therefore a question of law exists in the record, and such finding of facts is therefore not binding on this court, in that it is not a finding regarding the ultimate facts involved in the case but was a construction of the law.

Section 120 of the Practice act provides that when the Appellate Court reverses, without remanding, a cause as the result wholly or in part of the finding of the facts concerning matters in controversy different from the finding of the court from which the cause has been appealed, the Appellate Court is required to recite in its final order or judgment the facts found. In so doing the Appellate Court is required to draw its conclusion from all the evidentiary facts bearing on the issue. Such conclusion so drawn is the ultimate fact or facts upon which the case depends. (*Stevenson* v. *Earling,* 290 Ill. 565; *Sparta Gas Co.* v. *Illinois Southern Railway Co.* 247 id. 346; *Stone & Co.* v. *Ferry,* 239 id. 606.) The application of legal principles may be required to reach a conclusion of ultimate fact drawn from evidentiary facts, and the finding, therefore, becomes one of mixed law and fact. If there be a finding of the ultimate facts the inclusion in the recital thereof of evidentiary facts does not make it less a finding of fact as required by the statute. A finding of ultimate fact, whether drawn alone from evidentiary facts or by the additional application of legal principles, is binding on this court. (*Cobe* v. *Bartlett,* 270 Ill. 61; *McGovney* v. *Village of Melrose Park,* 241 id. 142; *Roemheld* v. *City of Chicago,* 231 id. 467.) Findings of ultimate facts are binding on appeal not only when there is direct conflict regarding the evidentiary facts but when those facts are fairly susceptible to contrary inferences or meaning. (*Northwestern Portland Cement Co.* v.

*Atlantic Portland Cement Co.* 163 Pac. (Cal.) 47.) Whether an agent has authority to do a certain thing may be a pure question of fact or it may be one of mixed law and fact, and the finding of the Appellate Court on such an issue is conclusive here. Likewise, whether one has notice of a certain fact is a question of fact and not of law. (*Cramer v. Burkhalter,* 207 Ill. 34; *City of Decatur v. Besten,* 169 id. 340.) We are of the opinion, therefore, that the finding that the plaintiff in error bank had notice or was put upon notice of the fact of Collum's want of authority to issue a check of Paine, Webber & Co. to pay his personal indebtedness was the finding of an ultimate fact. It is conceded that if plaintiff in error had notice of such want of authority it had no right to retain the proceeds of the check. Nor is it denied that such notice, if possessed by the bank at the time, would create a situation in which the taking of the check would amount to bad faith as that term is used and intended in the Negotiable Instruments act. This court is bound by the finding of fact of notice if there is in the record any substantial evidence to support such finding.

There is but little controversy in the evidence. For a number of years defendants in error had acted as brokers for the plaintiff in error bank for the sale and purchase of stocks, bonds and other securities. The record is without dispute that when securities were purchased for the plaintiff in error bank they were delivered to the bank on receipt of the latter's check for the amount due. When Paine, Webber & Co. sold securities for the bank it made remittances direct to the bank of the proceeds, less commissions. These remittances were by means of checks. The record shows that no other checks passed between these parties. The record also shows that the officials and employees of the plaintiff in error bank became acquainted with Collum and Carlson through these transactions, and the bank during those years became acquainted with the duties of those men in connection with the issuance of checks and receiv-

ing and delivering securities so far as transactions of the bank with Paine, Webber & Co. were concerned. Collum had a personal checking account with plaintiff in error though Carlson did not. These notes were, in fact, Collum's notes, as the bank must have known, since Collum made the only payments made on them, and notice of the call of both loans was given Collum and not Carlson. The check involved here was received in response to a demand made on Collum, and not on Paine, Webber & Co., for the payment of the personal notes of Carlson and Collum. The check was for the exact amount of Collum's indebtedness, including interest, and was received by the bank with full notice that it was to pay his notes. Persons dealing with an assumed agent are bound, at their peril, to ascertain not only the fact of the agency but the extent of the agent's authority. They are put upon their guard by the very fact that they are dealing with an agent, and must, at their peril, see to it that the act done by him is within his power. (*Foster* v. *Graf*, 287 Ill. 559; *Merchants' Nat. Bank* v. *Nichols & Shepard Co.* 223 id. 41; *Jackson Paper Manf. Co.* v. *Commercial Nat. Bank* 199 id. 151.) This rule is particularly applicable where, as here, the agent is contracting in his own personal interest and to the probable detriment of his principal. *Leigh* v. *American Brake-Beam Co.* 205 Ill. 147.

We have referred to this evidence in the record to show that there existed therein substantial evidence to support the Appellate Court's finding of fact that the plaintiff in error bank was not a holder in due course as defined by the Negotiable Instruments act. That issue is therefore not open for further consideration here, and as it is the ultimate fact on which the case of the plaintiff in error bank is bottomed, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*