## GRAHAM *v.* WHITE-PHILLIPS CO., INC.

No. 29. Argued October 23, 24, 1935.—Decided November 11, 1935.

---

[7] *Id.* p. 81.

*Mr. James J. Barbour,* with whom *Mr. W. Edgar Sampson* was on the brief, for petitioner.

*Mr. William L. Patton,* with whom *Mr. Harold A. Smith* was on the brief, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

By an appropriate proceeding, the Treasurer of Illinois sought an adjudication determining the ownership of eight one thousand dollar negotiable coupon bonds issued by the State. They were stolen from their lawful owner, petitioner Graham, August 30, 1930, and on Sept. 22, 1930, were purchased for a fair price in the ordinary course of its business by respondent's Chicago office from Connolly, listed dealer at St. Paul, Minnesota. No circumstance suggests conscious wrongdoing by the purchaser.

Three days after the theft, petitioner caused the Foreman corporation to send printed notices of it, with adequate descriptions of the bonds, to dealers throughout the country.

Accepting the record upon the view most favorable to the petitioner, we may assume, as the Circuit Court of Appeals did, that the notice was received by respondent's main office in Davenport, also at the Chicago branch, prior to the purchase; there was absence of ordinary care upon

the part of the Chicago branch in not making more elaborate provision for dissemination of the knowledge given by the notice; that respondent paid full value; at the time of the purchase it had no actual knowledge of the theft; it made no investigation to ascertain whether the bonds were stolen, other than to inquire concerning the status of the party offering them; the information given by the notice had been forgotten.

The District Court declared, as conclusion of law:

" The respondent, The White-Phillips Company, Inc., by reason of having actually received, prior to its purchase of the securities here involved, a notice that the same had been stolen as hereinabove set forth, did not, by the purchase of said bonds, become a holder thereof in due course, but that at such time the said respondent had knowledge of such facts that its action in taking such securities amounted to bad faith."

Decree went for petitioner here, which upon appeal, after a painstaking review of the authorities, was reversed. The cause was remanded for further proceedings.

The Illinois Negotiable Instrument Act provides:

" Holder in Due Course Defined. Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions:

" 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

" Notice of Infirmity—What Constitutes. Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The court below rightly concluded that the narrow question is this: " Did appellant have actual knowledge

of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith?" It ruled, that, as a purchaser of negotiable instruments in good faith, before maturity and for a valuable consideration, respondent should be protected against a charge of bad faith which has no fact support other than the receipt of a notice circulated generally among dealers which stated that certain bonds of a large issue had been stolen.

Petitioner insists, that under the authoritative construction placed upon the Illinois Negotiable Instrument Law by her Supreme Court, since respondent had received information of the defective title, there was bad faith as matter of law, and no title passed. He strongly relies upon *Northwestern National Bank* v. *Madison & Kedzie State Bank,* 242 Ill. App. 22, and the denial of certiorari therein.

Under *Burns Mortgage Co.* v. *Fried,* 292 U. S. 487, a definite construction of the negotiable instrument law by the State Supreme Court, binding upon the local tribunals, must be accepted by the federal courts. But we cannot think that the ruling and action in the *Northwestern Bank* case amount to such a construction. That cause, decided by the Appellate Court, First Division, October, 1926, involved title to stolen bonds held by one claiming as a bona fide purchaser, after receipt of notice of the theft. The court there said: " The notice having been received by the proper agent of the bank to receive, open and acknowledge its mail in the line of his duties, we think the bank is estopped from claiming that it did not have actual knowledge of the defect in the title to the bonds it subsequently received." The State Supreme Court denied an application for certiorari without more. The argument is that this amounted to approval of the construction placed upon the statute by the Appellate Court. The point is not well taken.

*National Bank* v. *Uptown State Bank*, 273 Ill. App. 401, (1934) construed the statute differently, and made no reference to the earlier case. We cannot know upon what ground certiorari was denied. The Illinois Supreme Court has declared that " Whether one has notice of a certain fact is a question of fact and not of law "; *Paine* v. *Sheridan Trust & Savings Bank*, 342 Ill. 342, 348; 174 N. E. 368; also that denial of certiorari does not import approval of the reasons assigned by the lower court. *People ex rel. Hoyne* v. *Grant*, 283 Ill. 391, 397; 119 N. E. 344.

The Appellate Courts in Illinois are inferior tribunals and a statute provided that their opinions " shall not be binding authority in any case or proceeding other than that in which they may be filed." Illinois Constitution, 1870; Article VI, § 11; Cahill's Illinois Rev. Stats. 1933, c. 37, par. 49.

No authoritative construction of the negotiable instrument law of Illinois supports petitioner's position. And the court below rightly undertook to determine for itself the meaning and effect of the pertinent sections.

As with other enactments, the negotiable instrument law must be interpreted in view of the intended end— here, the free circulation of negotiable paper—and the meaning attributed by the courts to the language employed.

In a contest over title to stolen negotiable bonds, the Supreme Court of Michigan recently considered the Uniform Negotiable Instrument Law of that State. *Merchants National Bank* v. *Detroit Trust Co.* (1932), 258 Mich. 526–536, 537; 242 N. W. 739. It held that one may purchase stolen negotiable bonds and acquire valid title as a holder in due course, although before the purchase, notice of the theft had come to him; but he may not willfully close his eyes to the notice, or resort to trick or artifice to avoid knowledge of its contents, or purposely forget

32

it. He must act in good faith. Concerning *Northwestern National Bank* v. *Madison & Kedzie State Bank, supra,* it said:

"As far as we have been able to determine this case stands alone. It estops the purchaser from showing good faith at the time the bonds are acquired. It makes notice of theft conclusive evidence of *mala fides.* It overlooks the well-established rule that though one has received actual notice, if by forgetfulness or negligence he does not have it in mind when he acquires the bonds, he may still be a good-faith purchaser. It has been said that the test is one of simple honesty and good faith."

It approved *Lord* v. *Wilkinson,* 56 Barb. (N. Y.) 593, which rejected an instruction that " The defendants, once having had notice, are bound by it, although the notice may have been forgotten," and declared:

" If the rule is well founded, that notice once given is good forever—that knowledge acquired when notice is given, is conclusive evidence of knowledge possessed when the notes were bought—then this charge is correct. But if the *bona fides* of the defendants must be judged of from their acts, purposes and knowledge as they existed upon the day of the purchase, then the notice served is only *prima facie* or presumptive evidence of *mala fides,* and may be rebutted by proof that the notice was lost, or its existence and contents forgotten."

The doctrine approved in Michigan should be accepted by the federal courts, in the absence of an authoritative ruling in the state whose laws apply. It accords with what this court said in *Goodman* v. *Simonds,* 20 How. 343–365, 366, 367; *Murray* v. *Lardner,* 2 Wall. 110; *Vermilye & Co.* v. *Adams Express Co.,* 21 Wall. 138–146; *Shaw* v. *Railroad Co.,* 101 U. S. 557–564; and *King* v. *Doane,* 139 U. S. 166–173. Also with the view long enforced in England. *Raphael* v. *Bank of England* (1855),

33 Eng. Law and Eq. R., 276; *London Joint Stock Bank* v. *Simmons,* Appellate Cases 1892, 201, 219; *Venables* v. *Baring Bros. & Co.* (1892), 3 Ch. Div. 527. Likewise with the conclusions of many state courts and writers of text books, as is pointed out in Daniel on Negotiable Instruments, 7th ed. (1933), §§ 885, *et seq.,* and the accompanying notes.

The challenged judgment must be affirmed. The cause will be remanded to the District Court for further proceedings.

*Affirmed.*