**HENRICKSEN et al. v. BAKER-BOYER NAT. BANK.**

No. 10409.

Circuit Court of Appeals, Ninth Circuit.

Jan. 5, 1944.

Rehearing Denied March 17, 1944.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, Irving I. Axelrod, and Jos. Jones, Sp. Assts. to Atty. Gen., J. Charles Dennis, U. S. Atty., and Thomas R. Winter, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, both of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for appellants.

Burns Poe and Elizabeth Shackleford, both of Tacoma, Wash., and Cameron Sherwood and Marvin Evans, both of Walla Walla, Wash., for appellee.

Before GARRECHT, DENMAN and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

There will be stated herein only such of the facts as relate to the question of whether or not the decree of distribution and the order construing it, both made by the Superior Court of Walla Walla County, Washington, are binding upon the appellants herein.

George T. Welch died on April 15, 1937, leaving an estate of $226,303. This amount represented one-half of the community estate, of which the other half under the laws of Washington belonged to the widow.

After providing for three cash bequests, Mr. Welch's will contained the following disposition: "I do hereby give, devise and bequeath unto my said wife, Carrie Welch, for and during her lifetime, should she survive me, all the rest, residue and remainder of my estate, both real and personal, including the rents, issues and profits therefrom, and of whatsoever the same may consist and wheresoever situated, with the distinct understanding that no limitation is placed on my said wife in any expenditures which she may make for any purpose, or any accounting be made thereof, with the then remainder over upon her death unto my Trustee, hereinafter named, in trust, nevertheless, for the uses and purposes hereinafter mentioned, * * *".

Subject to the life estate thus created, Mr. Welch gave to his trustee, the appellee herein, $30,000, the income from which, if any, was to be paid, under the terms of the will, to the decedent's son, Fred B. Welch. Mr. Welch also devised to his son, subject to the widow's life estate, the testator's undivided one-half community interest in certain realty, as his son's absolute estate. A number of other bequests in trust were made, including one of $12,500 for admittedly charitable use by the Board of Conference Claimants, Inc., of the Pacific Northwest Annual Conference of the Methodist Episcopal Church.

All the remainder of the estate, subject to the widow's and other interests outlined above, was devised to the appellee in trust for the concededly charitable purposes of providing support or education for boys and girls, providing support for the poor, aged and infirm, and erecting a home for the aged as a memorial to the testator and his widow.

On April 7, 1938, the widow entered into a stipulation for the partition of the estate, the effect of which admittedly was to permit the widow to receive only the income from her husband's property. This stipulation was approved by Judge Timothy A. Paul of the Superior Court of Walla Walla County, Washington. The stipulation was made a part of the appellee's Final Account and Report and Petition for Distribution, which was in turn "in all respects allowed, approved and settled" by the Superior Court.

On May 9, 1938, the same Court entered its final decree in the Matter of the Estate of George T. Welch, Deceased, adjudging, among other things, that the partition just referred to was a "just, fair and equitable division" of the estate described therein.

On March 29, 1940, the same Superior Court, in an action entitled "In the Matter of the Estate of George T. Welch, Deceased, Baker-Boyer National Bank, a Corporation, as Executor and Trustee, Petitioner, vs. State of Washington, Inheritance Tax and Escheat Division, Respondent," made an order holding that the State of Washington was "not entitled to assess inheritance taxes against the estate due to the fact that the charitable trusts created by the will of the decedent * * * were not limited to use in the State of Washington," and decreeing that the State was entitled to an additional inheritance tax of $3.16.

The above order contained the following language pertinent to the instant case:

" * * * the executor and trustee herein having raised the question that he is entitled to instructions from the court directing as to the fund or interest chargeable

under the laws of the State of Washington and the terms of said will of the decedent and the decree of distribution heretofore entered herein, the court hereby orders, adjudges and decrees and *construes the said will and decree of distribution:*

"(1) That under the words, terms and provisions of the said will, *admitted to probate herein and made a part hereof by reference,* the widow of the decedent, Carrie Welch, is entitled to receive from the decedent's half of the community property distributed to the trustee by the decree of distribution on file herein; that under the words, terms and provisions of said will, the said widow Carrie Welch, received only a life estate with a vested remainder over to the remaindermen therein mentioned, and subject to the trusts therein created.

"(2) That under the words, terms and provisions of said will the said widow Carrie Welch has no power to invade the corpus of said estate, but, during her lifetime, is entitled only to the net income above mentioned.

\*        \*        \*        \*        \*

"(4) That the trustee shall not permit the corpus of the said estate to be invaded by the said Carrie Welch, but shall at all times manage and control said property in accordance with the terms of said trust with the powers therein given to it \* \* \*." [Emphasis added]

No appeal was taken from the foregoing order of the Superior Court.

The appellee herein, as executor of the estate, filed an estate tax return with the appellant Henricksen, on a gross valuation of $226,303.96, and a net valuation of $7,325.42. The estate tax shown on the return and paid by the appellee was $146.50. The executor took as deductions in the return bequests for religious, charitable, scientific and educational purposes.

The Commissioner of Internal Revenue raised the gross valuation of the estate to $228,244.50, and increased the net estate to $180,301.68 by the disallowance of the above described charitable bequests, thereby increasing the estate tax by $21,417.55 over the tax of $146.50 already paid. This additional amount was paid to the Collector with interest on November 1, 1939, and January 9, 1940. On March 24, 1941, the appellee paid an additional assessment and interest, in the total amount of $1,165. Timely claims for refund were made, but were rejected by the Commissioner. On August 19, 1941, the appellee filed an action in the court below for recovery of the taxes paid, plus interest. The lower court entered a judgment for nearly the total amount claimed. From that judgment the present appeal has been taken.

Section 303 of the Revenue Act of 1926, c. 27, 44 Stat. 9, as amended by c. 209, 47 Stat. 169, § 807, and by c. 277, 48 Stat. 680, §§ 403(a) and 406, 26 U.S.C.A. Int.Rev. Acts, pages 232, 235, reads in part as follows:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a citizen or resident of the United States, by deducting from the value of the gross estate—

\*        \*        \*        \*        \*

"(3) The amount of all bequests, legacies, devises, or transfers, \* \* \* to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*."

Article 47, Treasury Regulations 80, contains in part the following language:

"Art. 47. *Conditional bequests.—*

\*        \*        \*        \*        \*

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

The ultimate questions in this case as formulated in the language of appellant are:

(a) Did the will give the widow the right to invade the corpus of the estate?

(b) If so, were the bequests to charities sufficiently definite and ascertainable as of the date of the testator's death to be deductible in determining the net estate for estate tax purposes under Section 303(a) (3), supra?

As we have seen, the Superior Court of Walla Walla County held that the will did not give the widow the right to invade the corpus, and that the trustee under the will—the appellee herein—should not permit her to do so. If that order is binding upon the appellants and upon this Court, it is determinative of the instant case.

The appellants concede that the will should be interpreted in the light of state law, but deny that the order of the Superior Court of Walla Walla County is conclusive here. In Uterhart v. United States, 240 U.S. 598, 603, 36 S.Ct. 417, 418, 60 L.Ed. 819, also a will case, the Government went farther in its admission. In that case the Court said: "It is very properly admitted by the government that the New York decree is in this proceeding binding with respect to the meaning and effect of the will. The right to succeed to the property of the decedent depends upon and is regulated by state law (Knowlton v. Moore, 178 U.S. 41, 57, 20 S.Ct. 747, 44 L.Ed. 969), and it is obvious that a judicial construction of the will by a state court of competent jurisdiction determines not only legally but practically the extent and character of the interests taken by the legatees."

In Knowlton v. Moore, 178 U.S. 41, 58, 20 S.Ct. 747, 754, 44 L.Ed. 969, supra, which was followed in the Uterhart case, supra, quoted from in the preceding paragraph, Mr. Justice [later Chief Justice] White used the following emphatic and unequivocal language: " * * * the right to regulate successions [estates] is vested in the states and not in Congress."

In Freuler v. Helvering, 291 U.S. 35, 44, 45, 54 S.Ct. 308, 312, 78 L.Ed. 634, the court said:

"We understand the respondent to concede the binding force of a state statute, or a settled rule of property, followed by state courts, and, as well, an antecedent order of the court having jurisdiction of the trust, pursuant to which payments were made. But, if the order of the state court does in fact govern the distribution, it is difficult to see why, whether it antedated actual payment or was subsequent to that event, it should not be effective to fix the amount of the taxable income of the beneficiaries. We think the order of the state court was the order governing the distribution within the meaning of the Act.

"Moreover, the decision of that court, until reversed or overruled, establishes the law of California respecting distribution of the trust estate. It is none the less a declaration of the law of the state because not based on a statute, or earlier decisions. The rights of the beneficiaries are property rights and the court has adjudicated them."

The right of a trustee to request instructions from the court in a case of this kind, and the line of demarcation between the powers of a State court and a Federal court in tax matters involving the construction of wills, are succinctly discussed by Mr. Chief Justice Hughes in Blair v. Commissioner, 300 U.S. 5, 9–11, 57 S.Ct. 330, 332, 81 L.Ed. 465:

"*Second.* The question of the validity of the assignments is a question of local law. The donor was a resident of Illinois and his disposition of the property in that State was subject to its law. By that law the character of the trust, the nature and extent of the interest of the beneficiary, and the power of the beneficiary to assign that interest in whole or in part, are to be determined. The decision of the state court upon these questions is final. [Cases cited] It matters not that the decision was by an intermediate appellate court. Compare Graham v. White-Phillips Co., 296 U.S. 27, 56 S.Ct. 21, 80 L.Ed. 20, 102 A.L.R. 24. In this instance, it is not necessary to go beyond the obvious point that the decision was in a suit between the trustees and the beneficiary and his assignees, and the decree which was entered in pursuance of the decision determined as between these parties the validity of the particular assignments. Nor is there any basis for a charge that the suit was collusive and the decree inoperative. [Case cited.] The trustees were entitled to seek the instructions of the court having supervision of the trust. That court entertained the suit and the appellate court, with the first decision of the Circuit Court of Appeals, before it, reviewed the decisions of the Supreme Court of the State and reached a deliberate conclusion. To derogate from the authority of that conclusion and of the decree it commanded, so far as the question is one of state law, would be wholly unwarranted in the exercise of federal jurisdiction.

"In the face of this ruling of the state court it is not open to the Government to argue that the trust 'was, under the Illinois law, a spendthrift trust.' The point of the argument is that, the trust being of that character, the state law barred the voluntary alienation by the beneficiary of his interest. The state court held precisely the contrary. The ruling also determines the validity of the assignment by the beneficiary of parts of his interest. That question was necessarily presented and expressly decided.

"*Third.* The question remains whether, treating the assignments as valid, the as-

signor was still taxable upon the income under the federal income tax act. That is a federal question."

See also Sharp et al. v. Commissioner of Internal Revenue, 303 U.S. 624, 625, 58 S. Ct. 748, 82 L.Ed. 1087; Lyeth v. Hoey, 305 U.S. 188, 193, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Hubbell v. Helvering, 8 Cir., 70 F.2d 668, 669; Commissioner of Internal Revenue v. Dean, 10 Cir., 102 F.2d 699, 701; Sharpe v. Commissioner of Internal Revenue, 3 Cir., 107 F.2d 13, 14, certiorari denied, 309 U.S. 665, 666, 60 S. Ct. 591, 84 L.Ed. 1013; Helvering v. Rhodes' Estate, 8 Cir., 117 F.2d 509, 510; Plunkett v. Commissioner of Internal Revenue, 1 Cir., 118 F.2d 644, 648; Hidden v. Durey, D.C.N.Y., 34 F.2d 174, 178.

██ So in the instant case, the question of whether or not Mrs. Welch could invade the corpus of the trust estate was one for the courts of the State of Washington to decide. On the other hand, whether or not the charity bequests in the will are taxable in the event that it is determined that Mrs. Welch could not invade the corpus, is a matter for the Federal courts to adjudicate. The appellants concede, however, that "the nature of the widow's estate under the will" is a "question precedent to that of whether the amounts of the bequests to charity were ascertainable at the date of the testator's death and, accordingly, [whether] the amounts [were] deductible from the gross estate for estate tax purposes." In other words, if it is found that under the will, as interpreted by the state court, Mrs. Welch could not invade the corpus of the estate, a Federal court, interpreting the Federal tax statute, must rule that the appellee shall prevail.

The appellants complain that the order of the Superior Court of Walla Walla County "insofar as it is relevant here, was a nonadversary proceeding" and that "neither the widow nor the remainder interests [were] a party to the proceeding."

██ It has long been settled that a probate proceeding is one in rem, and that if the statutory provisions regarding constructive service and notice are observed, it is binding upon "all persons in the world." Seventy years ago the Supreme Court definitely endorsed the principle. In the case of In re Broderick's Will, 21 Wall. 503, 88 U.S. 503, 509, 519, 22 L.Ed. 599, the Court said:

"* * * the constitution of a succession to a deceased person's estate partakes, in some degree, of the nature of a proceeding in rem, in which all persons in the world who have any interest are deemed parties, and are concluded as upon res judicata by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with the last chance of injustice and fraud; and that the result attained should be firm and perpetual.

* * * * *

"The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings in rem."

██ That constructive service is sufficient in proceedings that are in rem is hornbook law, established many decades ago by Pennoyer v. Neff, 95 U.S. 714, 727, 24 L.Ed. 565. In his monumental opinion, Mr. Justice Field said: "Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same, *or to partition it among different owners,* or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings in rem." [Emphasis added]

The final decree of distribution in the instant case recites that "due and legal notice of the hearing upon said Final Account and Report and Petition for Dis-

tribution has heretofore been given by posting and by publication and as by law required and in full compliance with the Order of this Court," etc. As we have seen, that decree of distribution approved the stipulated partition between the community estate of Mr. Welch and that of his widow. Indeed, it is not questioned that all the required statutory formalities were complied with in the probate proceedings that were had in the Superior Court of Walla Walla County.

■ The Supreme Court of the State of Washington has been emphatic in its pronouncements as to the sweeping and conclusive effect of orders and decrees of distribution.

In the case of In re Daub's Estate, 190 Wash. 420, 427, 68 P.2d 610, 612, the Court said: "This brings us to a consideration of the binding force of the decree of distribution. The decree was entered in a proceeding in rem and, proper notice having been given, was binding upon the entire world in respect of every question properly before the court for determination. [Case cited.] No personal notice was given to the remaindermen of the hearing on the final account; but, the published notice having been given, no personal notice was required."

Again, in Farley v. Davis, 10 Wash.2d 62, 70, 71, 76, 77, 116 P.2d 263, 268, the following language was used:

"It is settled law in this state that orders and decrees of distribution made by superior courts in probate proceedings upon due notice as provided by statute are final adjudications having the effect of judgments in rem, and are conclusive and binding upon all persons having any interest in the estate and upon all the world as well. [Many cases cited.]

"Such decrees cannot be attacked or annulled in any collateral proceeding, except for fraud. [Cases cited.]

\* \* \* \* \*

"Appellant's next contention is that the property was sold without the actual knowledge of appellant or of any of the heirs. There is no statute in this state which requires that personal notice of sales of real property in probate proceedings be given

to persons who are interested in the estate. The administration of an estate is a proceeding in rem, and when real property belonging to the estate is ordered to be sold, the statute requires only that notice of sale be given by posting and publication, whether the sale be by public auction \* \* \*, or at private sale. \* \* \* Likewise, notice by posting and publication, only, is required with respect to the hearing of the final report and petition for distribution. [Authorities cited.]"

See also In re Ostlund's Estate, 57 Wash. 359, 364–366, 106 P. 1116, 135 Am.St.Rep. 990; Doble v. State, 95 Wash. 62, 69, 163 P. 37; In re Nilson's Estate, 109 Wash. 127, 128, 186 P. 268.

■ Nor is this view of the Supreme Court of Washington regarding the binding effect of a probate order or decree confined to one in distribution only. In Krohn v. Hirsch, 81 Wash. 222, 227, 142 P. 647, 648, the Court, after reviewing a number of its earlier decisions, said: "These decisions also render it plain that this court holds that the statutory manner of giving notice preliminary to the rendering of orders and decrees in probate, although such notice is only constructive, that is, by publication and posting, amounts to due process of law, so that orders and decrees rendered in pursuance thereof are as binding upon all interested parties, so far as the subject-matter before the court is concerned, as if such parties were brought into court by personal notice. So thoroughly has this become the settled law of this state that further review and citation of authorities seems at this time unnecessary."

■ Accordingly, since both the stipulated partition, approved by the decree of distribution, and the order made by the Superior Court of Walla Walla County, settled the extent of Mrs. Carrie Welch's interest in the corpus of the estate, and adjudicated that she did not have the power to invade it, we find that the charity bequests were sufficiently ascertainable to warrant their deduction from the gross estate for estate tax purposes.

The judgment of the court below is consequently affirmed.