**MORGAN GUARANTY TRUST COMPANY OF NEW YORK,**
Plaintiff-Appellee,

v.

**THIRD NATIONAL BANK OF HAMPDEN COUNTY,**
Defendant-Appellant.

No. 75–1269.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1975.

Decided Jan. 20, 1976.

Elmer W. Beasley, Hartford, Conn., for defendant-appellant.

William T. Conlan, Boston, Mass., with whom Edward O. Proctor and Gaston, Snow & Ely Bartlett, Boston, Mass., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, ALD-RICH and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

Defendant, Third National Bank of Hampden County, Springfield, Massachusetts ("Third Bank"), appeals from the district court's determination that Third Bank was liable to Morgan Guaranty Trust Company ("Morgan"), for conversion of two Treasury Bills belonging to Morgan. The factual and legal background of the case is set forth in detail in the thoughtful opinion of the district court. 400 F.Supp. 383. We will discuss the facts and the law only insofar as is necessary to our treatment of the issues raised on appeal.

On October 16, 1969, an eight million dollar block of United States Treasury Bills were stolen from Morgan. The individuals who last saw the bills were three Morgan employees—John Conlan, Fred Gulino, and Joseph Szumski—who had had control of them for the purpose of processing the transfer of the bills from the Custody Incoming Section of the bank to Morgan's burglar proof basement vault. Treasury Bills 478335A and 478340A, each with a face value of $50,-000, were among the stolen securities.

Upon discovering that the securities were missing, Morgan notified the appropriate state and federal officials and caused the dissemination of "notices of lost securities", dated October 28, 1969, to bankers and brokers throughout the country. Treasury Bills 478335 and 478340 were listed, without the suffix "A", as among the missing bills.[1] Third Bank received Morgan's notice sometime well in advance of January 23, 1970. In accordance with its routine procedures, Third Bank disseminated copies of Morgan's notice to its larger branch offices and to its Trust and Collateral Departments.

In early October, 1969, Robert Bialkin appeared at Third Bank's Indian Orchard branch office and was introduced to George V. MacLeod, the manager of that branch office. After Mr. MacLeod made some inquiries, which the district court viewed as inadequate, Third Bank entered into a series of sizeable loan transactions with Bialkin, each loan being secured by one or more federal bearer bonds. Since Mr. MacLeod was not authorized to approve such loans, he telephoned Mr. Edward P. Welker, a loan officer at Third Bank's main office and an official in the Discount and Collateral Department, who approved each loan. The last of these loan transactions occurred on January 23 and 30, 1970. On these dates, MacLeod, with Welker's approval, loaned Bialkin a total of $82,000, these loans being secured by United States Treasury Bills 478335A and 478340A. Neither MacLeod nor Welker thought to check whether these bills—or indeed any of the bills that secured any of the loans—had been reported as stolen. In fact, neither MacLeod, Welker, nor Third Bank's President, Mr. Wilson Brunel, were aware of the existence of Third Bank's stolen securities file.

On February 3, 1970, Welker became concerned about Bialkin's loans. He inquired whether they could find out whether Bialkin's collateral had been stolen and was informed that the bank kept a stolen securities file. Shortly thereafter, Welker and several other em-

---

1. Third Bank argues that the omission of the suffix "A" from the serial numbers listed in Morgan's notice rendered the notice insufficient. The district court rejected this contention, and we cannot say that its decision was erroneous. The district court amply supported its conclusion that the inclusion of the six numerals in the serial number, the due date of the bills, and their face values were sufficient identification to put any person or institution on notice that a certain bill was among the missing. Here, moreover, the notice proved sufficient in actuality. When Third Bank finally consulted the list, it quickly determined that these bills were among those that had been stolen.

ployees scrutinized their lost securities file and found Morgan's October 28, 1969 notice. When they discovered an exact numerical match between the serial numbers on two of the bills listed in Morgan's notice and those on the bills Bialkin pledged as collateral for his last two loans, the officials contacted the Federal Reserve Bank of Boston and the FBI, who verified that the collateral indeed was part of the eight million dollar block of bills stolen from Morgan.

The district court held that the substantive law of Massachusetts applied[2] and found, sitting without a jury, that Third Bank was not a bona fide purchaser within the meaning of M.G.L. c. 106 § 8–302, and, therefore, was guilty of conversion since it had not acquired the Treasury Bills free of Morgan's adverse claim. *Id.* § 8–301(2). The district court also rejected Third Bank's argument that the doctrine of equitable estoppel operated to bar Morgan from asserting its claim to the bills. Third Bank challenges both rulings on appeal.

Under Massachusetts law, a bona fide purchaser "is a purchaser for value in good faith and without notice of any adverse claim." *Id.* § 8–302. The district court found that, although Third Bank purchased the bills for value and acted in subjective good faith, it had not purchased the bills without notice of Morgan's claim. The district court reasoned that Third Bank admittedly received Morgan's notice, *see id.* § 1–201(25), and, although neither MacLeod nor Welker were aware that the notice had been received, the notice was effective against Third Bank under the objec-

tive criteria of *id.* § 1–201(27). Section 1–201(27) provides that a notice "received by an organization is effective for a particular transaction . . . from the time when it would have been brought to [the attention of the individual conducting the transaction] if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines."

The district court found that Third Bank had failed to exercise due diligence because it did not make a reasonable effort to inform the members of the Discount and Collateral Department of the existence of a lost securities file. Had it exercised due diligence, a man in Welker's position would have been aware of the file, would have checked it before authorizing the loan, and would have learned that the treasury bills had been stolen.

Third Bank does not challenge the factual component of the district court's ruling. Rather, it contends that the district court applied an erroneous legal standard in ruling on the effectiveness of the notice Third Bank received. Its contention is that, despite § 1–201(27)'s prescription of objective criteria to determine the effectiveness of notice, the test in this case should have been subjective: were the individuals conducting the transaction consciously aware of having received the notice at the time they acted.[3] In support of this conten-

---

**2.** Neither party contests this determination on appeal.

**3.** Third Bank makes two additional arguments, each of which we can dispose of summarily. First, it maintains, relying upon *Gutekunst v. Continental Insurance Co.,* 486 F.2d 194 (2d Cir. 1973), that Morgan's notice was ineffective because a copy was not sent to the branch office from which the loan was made. We need not decide whether *Gutekunst,* which applied New York law, is consistent with the law of Massachusetts. Even if it is, it does not control the case at bar. Here a copy of Morgan's notice was sent to Third Bank's main

office. Since Mr. Welker, who approved Bialkin's loan, worked at that office, notice was sent to the office from which the loan was made.

Second, Third Bank contends that the district court erred by invoking § 1–201(27), since neither § 8–302 nor § 8–304 expressly refer to § 1–201(27). This contention is without merit. The definitions of § 1–201 apply throughout the Massachusetts Uniform Commercial Code unless the specific context otherwise requires. Since there is nothing in Article 8 that indicates that § 1–201's general definitions of notice should not apply, the district court did not err by invoking the criteria of § 1–201(27).

tion, Third Bank notes that the Massachusetts Uniform Commercial Code leaves open the time and circumstances under which notification may cease to be effective, *see id.* § 1–201(25), and that the Uniform Comment to the Code purports not to overrule such cases as *Graham v. White-Phillips Co.,* 296 U.S. 27, 56 S.Ct. 21, 80 L.Ed. 20 (1935), which follow the doctrine of "notice forgotten in good faith." *See id.* § 1–201, Uniform Commercial Code Comment 25. Since the doctrine of "notice forgotten in good faith" applies a subjective test to determine whether the notice had been forgotten, *see Merchants National Bank v. Detroit Trust Co.,* 258 Mich. 526, 242 N.W. 739 (1932), Third Bank contends that the district court should have applied a subjective test to determine whether Morgan's notice was effective.

■ We reject Third Bank's argument. We note that Third Bank has cited no case that suggests that Massachusetts has ever followed the doctrine of notice forgotten in good faith,[4] much less that it will follow it now that Massachusetts has adopted the Uniform Commercial Code. Although there may be circumstances in which Massachusetts would hold that a notification had ceased to be effective, we do not believe, in view of the objective criteria of §§ 1–201(25), (27),[5] *see* Braucher, *Notice Under the Uniform Commercial Code,* 4 Annual Survey of Mass.Law 12 (1957), that Massachusetts will adopt a purely sub-

jective test to determine the continued effectiveness of a notification received by an organization.[6] It is most likely that a notice will be deemed ineffective only because so much time has passed that the exercise of due diligence would not have brought the notice to the attention of the individual conducting the transaction.

■ Third Bank's final contention is that the district court erred in holding that the doctrine of equitable estoppel did not apply to bar Morgan's recovery. Under this doctrine, Morgan, not Third Bank, would bear the loss if Morgan were found to have "intrusted" the bills to the individual who made the loss possible. *See National Safe Deposit, Savings & Trust Co. v. Hibbs,* 229 U.S. 391, 33 S.Ct. 818, 57 L.Ed. 1241 (1913); *Loring v. Goodhue,* 259 Mass. 495, 156 N.E. 704 (1927); *Russell v. American Bell Telephone Co.,* 180 Mass. 467, 62 N.E. 751 (1902). The district court noted that the doctrine of equitable estoppel may have been displaced by M.G.L. c. 106 §§ 8–301, 8–302, and it doubted whether, even if Morgan's trusted employees had stolen the bills, there had been a showing of intrustment. The district court, however, did not rest its decision on either of these grounds. It found that the identity of the thief had not been established and that Morgan, therefore, could not be charged with having intrusted the bills to a thief, but with, at most, negligence or careless handling of the bills. Such

---

**4.** The cases Third Bank cites as following the doctrine of notice forgotten in good faith, *Fidelity & Deposit Co. v. City of Taunton,* 303 Mass. 176, 21 N.E.2d 279 (1939), and *Cohn v. City of Taunton,* 303 Mass. 182, 21 N.E.2d 281 (1939), do not stand for the proposition for which they have been cited.

**5.** The fact that the portion of § 1–201(27) that defines the exercise of due diligence was added to the Uniform Commercial Code by the 1962 Amendments for the purpose of removing any basis for the then present fear that large business organizations would have to make extensive investigations before purchasing securities in order to ensure that they were acting "without notice", *see* Report No. 1 of the Permanent Editorial Board for the 1962 Amendments to the Code, is of no help to

Third Bank. Our interpretation of § 1–201(27) as requiring only that organizations maintain reasonable routines for communicating the notices they receive is entirely consistent with this "legislative history."

**6.** *Bowling Green, Inc. v. State Street Bank & Trust Co.,* 425 F.2d 81, 85 (1st Cir. 1970), is not inconsistent with our holding today. In *Bowling Green* we stated that whether an individual has received notice within the meaning of § 1–201(25) depends largely upon the actual knowledge of the individual. Here there is no question but that Third Bank received notice within the meaning of § 1–201(25). The objective test of § 1–201(27) applies only after it has been determined that the organization received notice.

conduct does not, under well established Massachusetts case law, provide a basis for an estoppel. *See Union Old Lowell National Bank v. Paine,* 318 Mass. 313, 325, 61 N.E. 666, 672 (1945); *Varney v. Curtis,* 213 Mass. 309, 100 N.E. 650 (1913). Third Bank argues that the district court's finding that the identity of the thief had not been established is clearly erroneous. It maintains that the evidence in the record excludes the possibility that anyone other than a trusted Morgan employee had stolen the securities. We have examined the record carefully and cannot agree that the district court committed clear error in finding that the identity of the thief was uncertain. The evidence shows only that Morgan has no idea who stole the securities, not that Morgan eliminated the possibility that an outsider stole them.

*Affirmed.*