**Harry S. COPELAND, Sr. et al.**

v.

**JOHNS–MANVILLE PRODUCTS CORPORATION et al.**

Civ. A. No. 78–2207.

United States District Court,
D. New Jersey.

July 9, 1980.

Foster C. Ergood, Ambrose, Ergood & Rand, Haddonfield, N. J., for plaintiffs.

David J. Novack, Budd, Larner, Kent, Gross, Piccillo & Rosenbaum, Newark, N. J., for defendant Johns-Manville Products Corp.

Marc Z. Edell, Porzio & Bromberg, Morristown, N. J., for defendant Lake Asbestos of Quebec, Ltd.

Elliott Yampell, Yampell & Cosentino, Haddonfield, N. J., for defendant North American Asbestos Corp.

Anthony D. Buonadonna, Tuso, Gruccio, Pepper, Buonadonna, Giovinazzi & Butler, Vineland, N. J., for defendants Philip Carey Company and Carey Canadian.

Richard E. Andronici, Parker, McCay & Criscuolo, Mount Holly, N. J., for defendant Aetna Life and Casualty Co.

Andrew T. Berry, McCarter & English, Newark, N. J., for proposed defendant Owens-Illinois, Inc.

## OPINION

BROTMAN, District Judge.

This is one of a host of actions arising from the alleged exposure of workers to asbestos or asbestos containing products while in the course of their employment. Jurisdiction in this case is predicated upon the diversity of citizenship of the parties. 28 U.S.C. § 1332. The court must answer the question whether the employers of these workers may be called to answer for their alleged tortious conduct in an action at common law or whether they are shielded from any liability at common law as a result of the operation of the New Jersey workmen's compensation statute. N.J.S.A. 34:15–1 *et seq.*

This question is presented to the court by plaintiffs' motions for leave to file an amended and supplemental complaint setting forth their claims of "intentional wrong" against the former employers of two workers, Owens-Illinois, Inc. (Owens-Illinois) and Owens-Corning Fiberglas Corporation (Owens-Corning), and for leave to file an amendment [1] to the proposed amended complaint.[2] The plaintiffs' proposed amended and supplemental complaint contains a count setting forth their claims against these two companies, stating in pertinent part:

7. Defendant, Owens-Illinois, Inc., and defendant Owens Corning Fiberglas, forewarned with the knowledge of plaintiffs' imminent peril, intentionally, maliciously, wilfully, wantonly and with reckless disregard to the health interest of plaintiffs and others similarly situated failed to advise plaintiffs of their peril, failed to take proper precautionary steps to protect plaintiffs from this peril, failed to provide a safe workplace as described by law, failed to remove plaintiffs from said peril and intentionally withheld information from the plaintiffs about the dangerous conditions in which they worked and the dangerous nature of material to which they were daily exposed and, moreover, failed to advise plaintiffs that they were in fact developing a disease while in these defendants' employ.

8. Each of the aforesaid failings on the part of defendant, Owens-Illiois, Inc., and defendant, Owens Corning Fiberglas, were motivated by their desire to foster

---

1. Plaintiffs' motion for leave to file an amendment to their proposed amended and supplemental complaint was necessitated by certain typographical errors in the preparation of their original proposed amended and supplemental complaint. The changes suggested by the proposed amendment to the proposed amended and supplemental complaint do not affect the merits of the plaintiffs' motion to amend their complaint.

2. This matter is also before the court upon the motion of one of the defendants, Lake Asbestos of Quebec, Ltd. (Lake Asbestos), to strike the ad damnum portions of plaintiffs' proposed

amended and supplemental complaint because it sets forth a demand for a specific sum of money in damages. Lake Asbestos asserts that this demand violates Rule 8 G. of the rules of the United States District Court for the District of New Jersey, which provides in pertinent part that a "pleading which sets forth a claim for relief in the nature of unliquidated money damages shall state in the ad damnum clause a demand for damages generally without specifying the amount." However, in light of the court's disposition of the plaintiffs' motions, it need not address the motion of defendant Lake Asbestos.

an atmosphere of ignorance among their employees in order to insure uninterrupted work and profits.

9. As a result of defendants' failings aforedescribed, plaintiffs directly and proximately suffered the injuries complained of herein.

Plaintiffs' Proposed Amended and Supplemental Complaint, at 10. The court shall now consider whether the New Jersey workmen's compensation statute bars the assertion of a claim predicated upon these allegations.

The New Jersey workmen's compensation statute, like all workmen's compensation acts, establishes a different method for determining liability than the traditional approach followed by the courts in actions at common law. It creates a presumption, rebuttable only by an express written statement to the contrary in advance of any accident, that every employment contract is governed by its article on elective compensation. N.J.S.A. 34:15–9. That article states that "compensation for personal injuries to, or for the death of, such employee by accident arising out of and in the course of his employment shall be made by the employer without regard to the negligence of the employer" according to statutory schedules for payment. N.J.S.A. 34:15–7. The *quid pro quo* for this statutory declaration of employer liability for all employee injuries is to be found in N.J.S.A. 34:15–8, which provides that the agreement of the parties to adhere to the article on elective compensation shall normally bar the pursuit of other remedies against the employer. It reads:

> Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee himself and for compensation for his death shall bind his personal representatives, his widow and next of kin, as well as the employer, and those conducting his business during bankruptcy or insolvency.

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, *except for intentional wrong.*

N.J.S.A. 34:15–8 (emphasis added). In other words, an injured worker cannot maintain a common law action for damages against his employer unless the alleged conduct of the employer constituted an "intentional wrong" within the meaning of the statute. The issue which the court must now resolve is whether the plaintiffs' proposed claim against Owens-Illinois and Owens-Corning states a claim for an "intentional wrong," as the term has been construed by the courts.

The only New Jersey case interpreting the "intentional wrong" exception, which was adopted in 1961 when the New Jersey legislature amended N.J.S.A. 34:15–8 to add the second paragraph of that section, is *Bryan v. Jeffers*, 103 N.J.Super. 522, 248 A.2d 129 (App.Div.1968), *certification denied*, 53 N.J. 581 (1969). In that *per curiam* opinion the court reviewed the circumstances under which N.J.S.A. 34:15–8 was amended, as set forth in the opinion in *Miller v. Muscarelle*, 67 N.J.Super. 305, 321, 170 A.2d 437, 445 (App.Div.1961), *certification denied*, 36 N.J. 140. According to the *Miller* court, the amendment was enacted in response to the criticism of "[t]he continued subsistence of a cause of action in tort against a fellow-employee." *Id.*, at 321, 170 A.2d, at 445. The court observed that the existence of that cause of action

> has frequently resulted in burdening the employer indirectly with common-law damages superimposed upon his workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify the sued director, officer or supervisory employee, or with the expense of carrying insurance to cover the personal liability of such supervisory personnel. . . . Recognizing that such consequences conflict with the gen-

eral scheme of the Workmen's Compensation Act, the Legislature this year amended the act . . . expressly to preclude a right of recovery on account of a compensable injury or death at common law or otherwise against a fellow-employee except in cases of intentional wrong.

*Id.* Based upon its review of the legislative background of the amendment by the *Miller* court, the *Bryan* court rejected "the contention of [the] plaintiff that the exception for 'intentional wrong' in the statute eliminating tort liability, as between persons in the same employ, where the injury sued for is compensable by workmen's compensation, *N.J.S.A.* 34:15–8, is equatable with 'gross negligence,' or similar concepts importing constructive intent." *Bryan, supra,* at 523, 248 A.2d, at 130. The *Bryan* court reasoned:

> The policy objective sought by the 1961 amendment would not be attained if the exception for "intentional wrong" were construed to leave open a loophole for such actions against fellow employees in the guise of claims for "gross negligence." We think the Legislature intended the words "intentional wrong," in this context, to have their commonly understood signification of deliberate intention.

*Id.,* at 523–24, 248 A.2d, at 130.

■ Although this court does not share the confidence of the court in *Bryan, supra,* that the New Jersey legislature intended to create such a narrow exception to the workmen's compensation bar when it amended *N.J.S.A.* 34:15–8, this court's role when it exercises its diversity jurisdiction is to apply the law as interpreted by the New Jersey courts, not to provide its own independent interpretation. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Moreover, the fact that the New Jersey Supreme Court has not directly addressed the issue now before the court does not give a federal district court sitting in a diversity case free rein in interpreting the state statute. As the Supreme Court declared in *West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940):

> True, as was intimated in the *Erie Railroad* case, the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted. See *Wichita Royalty Co. v. City National Bank of Wichita Falls,* 306 U.S. 103, 107 [59 S.Ct. 420, 83 L.Ed. 515]. But the obvious purpose of § 34 of the Judiciary Act is to avoid the maintenance within a state of two divergent or conflicting systems of law, one to be applied in the state courts, the other to be availed of in the federal courts, only in case of diversity of citizenship. That object would be thwarted if the federal courts were free to choose their own rules of decision whenever the highest court of the state has not spoken.

> A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts. See *Erie Railroad Co. v. Tompkins, supra* [304 U.S.], 78 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487]; *Russell v. Todd, supra* [309 U.S.], 293 [60 S.Ct. 533, 84 L.Ed. 754].

Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Six Companies of California v. Joint Highway District, ante* [311 U.S.] p. 180 [61 S.Ct. 186, 85 L.Ed. 114] decided this day; *Fidelity Union Trust Co. v. Field, ante* [311 U.S.] p. 169 [61 S.Ct. 176, 85 L.Ed. 109], decided this day. Cf. *Graham v. White-Phillips Co.*, 296 U.S. 27 [56 S.Ct. 21, 80 L.Ed. 20, 102 A.L.R. 24]; *Wichita Royalty Co. v. City National Bank, supra* [306 U.S.], p. 107 [59 S.Ct. 421, 83 L.Ed. 515]; *Russell v. Todd, supra.* This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.

Based upon these principles, this court feels constrained to follow the decision of the *Bryan* court and to deny the plaintiffs leave to file an amended and supplemental complaint to set forth their claims against Owens-Illinois and Owens-Corning. Any modification of the scope of the "intentional wrong" exception to the workmen's compensation bar must come from the New Jersey legislature or the New Jersey courts. It is to those bodies which persons seeking to change the law must turn.

The motions of the plaintiffs for leave to file an amended and supplemental complaint and to file an amendment to the proposed amended and supplemental complaint are denied. The court shall enter an appropriate order.